### Herbert Russell BASSETTE, Petitioner–Appellant,

v.

### Charles E. THOMPSON, Mary Sue Terry, Attorney General of Virginia, Respondents–Appellees.

### No. 89–4010.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1990.

Decided Oct. 5, 1990.

---

William Howell Wright, Jr., argued, Hunton & Williams, Richmond, Va., for petitioner-appellant.

Linwood Theodore Wells, Jr., Assistant Attorney General, argued, Office of Atty. Gen., Richmond, Va. (Mary Sue Terry, Atty. Gen., Office of Atty. Gen., Richmond, Va., on brief), for respondents-appellees.

Before ERVIN, Chief Judge, and CHAPMAN and WILKINSON, Circuit Judges.

CHAPMAN, Circuit Judge:

Herbert Russell Bassette was convicted of capital murder by a jury on August 22, 1980, and was sentenced to death. He appealed his conviction without success to the Supreme Court of Virginia, *see Bassette v. Commonwealth*, 222 Va. 844, 284 S.E.2d 844 (1981). He was also unsuccessful with his petition for certiorari to the United States Supreme Court, *Bassette v. Virginia*, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982). He petitioned for habeas corpus in the Virginia state courts, and after four days of hearings and the taking of extensive testimony, the Circuit Court of Henrico County denied the petition in a lengthy opinion filed March 19, 1985. The Virginia Supreme Court denied his habeas corpus appeal on March 26, 1988.

On April 4, 1988, Bassette filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia. In his petition he raised twelve grounds for relief. He successfully moved for the appointment of counsel and an amended petition was filed August 16, 1988, setting forth 28 grounds and incorporating the claims made in the pro se petition. Certain of the claims were restated and thereafter 36 claims were presented to the district court. By order entered November 29, 1988, the district court granted summary judgment for Warden Thompson on 32 of the claims and

directed additional briefing and argument on the four remaining claims. By an order entered August 13, 1989, the district court dismissed the remaining claims. In its opinion, the district court found that almost all of the claims of appellant were being asserted for the first time in the federal petition, and that these claims had not been raised on direct appeal or in the Virginia habeas corpus proceeding. The district court concluded that the claims were not barred by state procedural default rules, and then addressed the merits of the claims and found against the appellant.

We find that under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), all of Bassette's claims are procedurally barred except his claims (1) that the district court should have conducted an evidentiary hearing, (2) that the district court did not independently examine the state record, and (3) that there was an abuse of discretion by the trial judge in refusing to allow Bassette to represent himself in the sentencing phase. We have considered these exceptions and find no merit in them. However, because the district court considered the merits of other claims, we have reviewed the merits of the other exceptions set forth in his brief, find no error, and conclude that the appellant received a constitutionally fair trial. Therefore, we affirm.

## I

Bassette was convicted of murder during the commission of a robbery while armed with a deadly weapon. The victim was a 16–year-old night attendant at a Richmond, Virginia, gas station. His nude body was found November 24, 1979, in a ditch bordering a road in Henrico County. The body revealed six gunshot wounds. The prosecution presented the testimony of three individuals, who participated in the robbery, and identified Bassette as the person who fired the fatal shots as his young victim begged for mercy.

Bassette testified and denied committing the crime. He claimed that he was not with the three individuals on the night of the crime. His claim of alibi was supported by his girlfriend, who by the time of trial was his wife, and also by his girlfriend's mother. Bassette's niece, Joyce Ann Mason, also testified that Bassette, his girlfriend and her children had visited her grandmother's house on the night of the murder. Ms. Mason stated she remembered the date because she had noted the visit in a journal she was keeping for a class she was attending at J. Sergeant Reynolds Community College. She stated that the journal had been turned in to the teacher, but that she had retrieved it and verified the date before testifying. The first trial ended with a hung jury, and at the second trial, which resulted in a conviction, the prosecution presented the rebuttal testimony of Ms. Mason's college instructor, who testified that the assignment to keep a journal did not start until long after November 1979, and that she had not met Mason until April 1980.

At the second trial, the jury recommended a sentence of death. The trial judge considered the presentence report and on November 19, 1980, confirmed the jury's verdict and ordered Bassette to be executed.

## II

The district court found that of the 36 claims presented by Bassette in his federal habeas corpus petition, 22 were being asserted for the first time and that they had not been raised by Bassette on either his direct appeal or his collateral habeas corpus proceeding in the Virginia state courts, and five of the claims were presented on direct appeal but not in the state habeas petition. Warden Thompson waived exhaustion of Bassette's state remedies and asserted that further proceedings in the state court would be fruitless and the federal proceedings would be expedited by his waiver of the exhaustion requirement. However, Thompson did not waive his position that the state procedural bar applied to the present federal habeas corpus petition. Bassette presents seven issues to us for review. Six of these claims involve the state trial, and only one has ever been presented to a Virginia court—the claim of

abuse of discretion by the trial judge in refusing to allow appellant to represent himself before the sentencing jury. The seventh claim is that the district court did not conduct an evidentiary hearing and did not independently examine the state court record before denying appellant's petition.

The district court considered *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), and *Teague v. Lane, supra,* and concluded that there was not a clear and express statement of the state court that it had relied upon a procedural default by the petitioner, and that there was an issue in the present case as to whether the claims had been properly exhausted. The district court then proceeded to consider the merits of Bassette's petition and granted summary judgment against him.

▮ We find that the district court read *Harris v. Reed* and *Teague v. Lane* too narrowly, and that five of the seven present claims are barred by the procedural default of Bassette in failing to present these claims on direct appeal to the Virginia Supreme Court or in his state collateral attack on his conviction.

*Harris v. Reed* involved a federal habeas corpus petition following a state conviction and held that the federal court may reach the federal questions on review unless the state court's opinion contains a plain statement that its decision rested upon adequate and independent state grounds, and that the state court must have actually relied on the procedural bar as an independent basis for its disposition of the case. The Court found that the state court's statement that most of the ineffective assistance of counsel allegations "could have been raised (on) direct appeal" was not sufficient to be a "plain statement" since it was not an explicit reliance on state court waiver as a ground for rejecting any aspect of the petitioner's claim. *Harris v. Reed,* 109 S.Ct. at 1044-45. It must not be ambiguous as to whether the state court has invoked a procedural default bar, and there must be a

"plain statement" that its judgment rested on a procedural bar. *Teague v. Lane* was decided on the same day as *Harris v. Reed.* Both cases involved habeas petitions resulting from convictions in the state courts of Illinois. These appeals were obviously decided together because the court wanted to emphasize the slight difference in facts that resulted in a different holding. In *Teague* the petitioner had not raised his federal claim at trial or on direct appeal and this default prevented him from raising it in collateral proceedings under the Illinois Post-Conviction Act. The Supreme Court found that his federal claim was procedurally barred and then explained the difference between *Harris* and *Teague:*

> Our application of the procedural default rule here is consistent with *Harris v. Reed,* 109 S.Ct. 1038[, 489] U.S. [255, 103 L.Ed.2d 308,] (1989), which holds that a "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." (citations and internal quotations omitted). The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. It is simply inapplicable in a case such as this one, where the claim was never presented to the state courts.

*Teague,* 109 S.Ct. at 1068-69.

Bassette did not raise five of his present claims on direct appeal or in his state habeas corpus proceeding.* Virginia law is clear that these five claims are barred because they are based upon "facts of which petitioner had knowledge at the time of the filing of any previous petition." The provisions of § 8.01-654(B)(2), Code of Virginia, are clear: "No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition."

---

* These are the claims that his probation officer did not advise him of his Miranda rights, that he was denied a psychologist and denied cross-examination of the Commonwealth's psychologist, and various assertions of ineffective assistance of counsel.

This statute has been consistently applied to bar claims which could have been raised in an earlier habeas proceeding, and it is clear that five of the seven claims are based on facts knowledgeable to him at the time of his prior state petition, which was decided March 19, 1985. We have enforced the state procedural bar of § 8.01–654(B)(2). *See Clanton v. Muncy,* 845 F.2d 1238 (4th Cir.), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988).

If Bassette now attempted to raise his present claims in a state habeas corpus petition, they would be barred by the clear language of the Virginia statute, which is enforced by the Supreme Court of Virginia. *See Dodson v. Director of Dept. of Corrections,* 233 Va. 303, 355 S.E.2d 573 (1987).

This is the same issue decided in *Teague v. Lane, supra,* the claim has not been presented to the state court and it is now barred. When a claim is never presented to the state court *Teague* does not require that the last state court rendering judgment "clearly and expressly" state that its judgment rests on a state procedural bar.

▉ There is no merit to Bassette's claim that the warden's waiver of exhaustion of Bassette's state remedies in some way prevents or weakens his reliance upon the state procedural bar. The Virginia courts enforce the bar to subsequent habeas petitions when the petitioner had knowledge of the facts at the time of his previous petition, and it would serve no useful purpose and would only prolong the final resolution of this matter to require Bassette to file a futile state petition. *Teague* teaches that when it is clear that the state law would bar state review, exhaustion is not required, and federal review is precluded.

Under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), Bassette is barred from raising his claims in a federal habeas corpus petition when he has not complied with state procedures, unless he is able to show just cause for his default and prejudice resulting therefrom. Appellant has made no showing of just cause for his default or prejudice, so he may not raise his present claims in federal court.

III

As we have previously indicated, five of Bassette's claims are procedurally barred, but we have reviewed the exceptions to the district court's opinion on the merits, and we find no error there.

▉ First, appellant claims that he was not given the necessary warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to his interview with a probation and parole officer on September 22, 1980. Officer Murphy interviewed Bassette after his conviction and the jury's recommendation of the death penalty. This interview is required under § 19.2–264.5 of the Code of Virginia which provides:

When the punishment of any person has been fixed at death, the court shall, before imposing sentence, direct a probation officer of the court to thoroughly investigate upon the history of the defendant and any and all other relevant facts, to the end that the court may be fully advised as to whether the sentence of death is appropriate and just. Reports shall be made, presented and filed as provided in § 19.2–299. After consideration of the report, and upon good cause shown, the court may set aside the sentence of death and impose a sentence of imprisonment for life.

Appellant contends that statements made by him in the interview with the probation and parole officer were used against him at the sentencing hearing, and that these statements were relied upon by the judge in deciding to accept the jury's recommendation of death rather than setting aside this sentence and imposing a sentence of life imprisonment.

The complained of statement contained in the presentence report was: "The subject maintains that he was with his wife and two children at the time of the incident." Appellant contends that the prosecuting attorney used this statement to argue to the court that the defendant was not entitled to mitigation of the sentence because he had not accepted responsibility for his acts and

this should be considered as evidence that he would harm people in the future.

As an exhibit to his motion for summary judgment, the appellee attached a certificate of the trial judge as permitted under 28 U.S.C. § 2245 (1988) which states:

On the hearing of an application for a writ of habeas corpus to inquire into the legality of the detention of a person pursuant to a judgment the certificate of the judge who presided at the trial resulting in the judgment, setting forth the facts occurring at the trial, shall be admissible in evidence. Copies of the certificate shall be filed with the court in which the application is pending and in the court in which the trial took place.

In his certificate the state trial judge stated: "The fact that Bassette denied to the probation and parole officer that he committed the murder did not influence me in setting his sentence of death." The state court's finding of fact that the trial judge was not influenced by Bassette's statement is presumed to be correct under 28 U.S.C. § 2254(c).

Although *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), lends support to appellant's claim that he should have been advised of his Fifth Amendment privileges prior to his post conviction interview with the probation and parole officer, on the present facts, such failure was harmless because of the trial judge's certificate that he was not influenced by Bassette's denial of guilt in setting the sentence.

*Estelle* was decided two years after Bassette's trial. It established a "new rule" which is not applied retroactively because it does not meet either of the two exceptions to the general rule of non-retroactivity as is more fully explained in Part IV hereof.

## IV

■ Bassette claims that he was denied due process because the presentence report contained excerpts from a psychiatric evaluation conducted by a prison psychologist in 1967, at a time when he was imprisoned on a charge of armed robbery. He asserts that the statements of the psychologist, Dr.

D.H. Doub, were used against him in the sentencing hearing and that the Commonwealth used this evidence without providing him with an expert to refute Doub's statements. Dr. Doub had died before Bassette's murder trial. In support of his position, appellant relies upon *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which held that in a capital sentencing procedure, when the state presents psychiatric evidence of the defendant's future dangerousness, due process requires that the defendant have access to psychiatric testimony, a psychiatric examination, and assistance in preparing for the sentencing stage.

In the present case, the psychiatric examination was not made in connection with the sentencing phase of Bassette's 1980 murder case, but was concluded 13 years earlier in connection with an armed robbery. However, it is not necessary to belabor this point because *Ake* was not decided until five years after Bassette's trial and sentencing, and *Ake* announces a new rule which is not to be applied retroactively. In *Teague, supra,* the Court stated that new constitutional rules of criminal procedure would not be applied on collateral review to cases which had become final before the new rules were announced. Bassette's conviction became final at least three years before the Supreme Court adopted the new rule in *Ake* which held that due process requires that a defendant be provided with psychiatric assistance in preparation for a capital sentencing proceeding, if the state intends to present psychiatric evidence against the defendant. This new rule is not to be applied retroactively.

*Teague* identified only two exceptions to the general rule of non-retroactivity of a new rule to cases on collateral review, and Bassette does not come within either exception.

First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Mackey* [*v. United States* ] 401 U.S. [675] at 692, 91 S.Ct. [1171] at 1180 [28 L.Ed.2d 388

(1971)] (separate opinion). Second, a new rule should be applied retroactively if it requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" *Id.*, at 693, 91 S.Ct. at 1180 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 [58 S.Ct. 149, 152, 82 L.Ed. 288] (1937) Cardozo, J.). 109 S.Ct. at 1073.

The proscribed conduct in the present case is capital murder, the prosecution of which is not prohibited by the new rule announced in *Ake*. The first exception actually refers to certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, *i.e.*, a state statute forbidding the use of contraceptives which was struck down in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and the Virginia statutory scheme to prevent marriages between persons solely on the basis of racial classifications, which was found to violate equal protection and due process in *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

Under the second exception a new rule is applied retroactively on collateral review only, if it requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" The use of the 1967 psychologist report is not a matter that is "implicit in the concept of ordered liberty." A sentencing court's consideration of reports in a presentence investigation is guided by the holding in *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), in which the court found that the due process clause of the Fourteenth Amendment did not require that a person convicted after a fair trial be confronted with and permitted to cross-examine witnesses as to his prior criminal record considered by the judge in determining what sentence to impose. The Supreme Court also concluded: "It is urged, however, that we should draw a constitutional distinction as to the procedure for obtaining information where the death sentence is imposed. We cannot accept the contention." *Id.* at 251, 69 S.Ct. at 1085. *Williams* has been cited with approval by the Supreme Court as recently as 1978.

*See United States v. Grayson*, 438 U.S. 41, 53–54, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978).

V

■ We are unpersuaded by Bassette's claim of ineffective counsel because his attorney did not object to the introduction of that portion of the presentence report which contained the report of the psychologist. The primary case relied upon by the appellant as to the right to cross-examine anyone contributing information to the presentence report is *Proffitt v. Wainwright*, 685 F.2d 1227 (11th Cir.1982), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983). This case was decided two years after Bassette's trial and we do not find its reasoning persuasive. The report could properly be considered under *Williams, supra.*

VI

■ Appellant claims ineffective assistance of counsel because his trial attorney failed to conduct a sufficient investigation of his alibi witness, Joyce Ann Mason, so as to realize that she was lying in her testimony that the appellant had visited her grandmother on the night of the murder and was accompanied by his girlfriend and her children. Witness Mason claimed that she had noted this in a journal kept for her class at J. Sergeant Reynolds Community College. Mason's testimony was destroyed at the second trial by the testimony of her teacher who stated that the assignment to keep a journal was not made until almost six months after the murder.

This is not evidence of ineffective assistance of counsel, but is only evidence that Bassette introduced his attorney to a witness who was willing to lie under oath. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the proper standard for judging attorney performance is that of reasonably effective assistance, considering all of the circumstances. The circumstances in this case reflect that appellant produced certain relatives and close acquaintances who would

testify that he was with them on the night of the murder. The attorney's performance is not constitutionally defective in this instance because he did not go to the college and interview Mason's instructor in an effort to verify her testimony. There is no rule that counsel must disbelieve prospective witnesses presented to him by his client, or that he must spend considerable time and effort in testing the veracity of such witnesses or attempting to disprove their statements.

## VII

We find no merit to appellant's claim that his attorney was ineffective in presenting his defense during the sentencing phase of the trial, because only two witnesses were called. He argues that his attorney, by calling only two witnesses, in effect produced no evidence. He also claims that it was error for the district court not to conduct an evidentiary hearing on this point and on all of the points he raised in the district court. Bassette asserts that by calling only his parole officer and his jailer, his attorney produced no evidence and that under *Turner v. Bass*, 753 F.2d 342 (4th Cir.1985), *reversed on other grounds*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), he was entitled to an evidentiary hearing. He misreads *Turner*. It does not require an evidentiary hearing in every case, but states:

> When a habeas petitioner presents facts, which if proved, would entitle him to habeas corpus relief, a federal court can receive that evidence at a hearing. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963). An evidentiary hearing in a federal habeas corpus proceeding is required only if the habeas petitioner establishes one or more of the enumerated criteria of 28 U.S.C. § 2254(d) or in *Townsend, supra*, at 312–318, 83 S.Ct. at 756–759. *Shaw v. Martin*, 733 F.2d 304 (4th Cir.1984). Where a state court has decided the merits of a claim but made no express findings of fact, the district court may be able to reconstruct those findings without a hearing. Of course, no hearing is required if the facts alleged by the petition-

er and assumed to be true are insufficient to support a claim.

*Id.* 753 F.2d at 347.

Bassette does not meet the criteria of either 28 U.S.C. § 2254(d) or *Townsend*. Under § 2254(d), a determination made by a state court after a hearing on the merits of the factual issue in a habeas corpus petition, and a judgment by the state court evidenced by a written opinion, are presumed to be correct unless the petitioner can show: (1) that the merits of the factual dispute were not resolved in the state court; (2) that the fact-finding procedure was not adequate to afford a full and fair hearing; (3) that material facts were not adequately developed; (4) that the state court lacked jurisdiction over the subject matter or the person of petitioner; (5) that petitioner did not have counsel appointed in the state proceedings; (6) that he did not receive a full, fair and adequate hearing; (7) that he was otherwise denied due process; or (8) the finding of the state court is not fairly supported by the record.

*Townsend* requires an evidentiary hearing in the federal court on a habeas corpus petition when there has not been "a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." 372 U.S. at 312, 83 S.Ct. at 756. Bassette received a full and fair hearing in the state court when that court took four days of testimony and heard oral argument in his collateral attack upon his conviction. He is not able to establish any of the eight exceptions set forth in § 2254(d) and, therefore, the factual findings made by the state court are presumed to be correct and an evidentiary hearing in the district court was not required.

The great failing of the appellant on his claim that other evidence should have been presented during the sentencing phase of his trial is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called. He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not

advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify. Appellant cannot establish ineffective assistance of counsel under *Strickland v. Washington* on the general claim that additional witnesses should have been called in mitigation. *See Briley v. Bass,* 750 F.2d 1238, 1248 (4th Cir.1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

## VIII

 Appellant claims error by the trial judge in refusing to allow him to represent himself during the sentencing phase. At the close of all of the evidence in the sentencing phase, Bassette asked permission to represent himself and to make the closing argument to the jury. This motion was made over the objection of his two attorneys, and it was opposed by the Commonwealth's Attorney. The trial judge denied the motion and pointed out that Bassette had been represented throughout by two attorneys, that the attorneys had advised the court that one would handle the guilt phase of the trial and the other would handle the sentencing phase, and that until the moment of the motion the court had not been advised of any desire by Bassette to represent himself and make the closing argument.

After the court had ruled, one of the attorneys for Bassette continued to press the motion and stated that Bassette was adamant in his position that he had the right to make the closing argument. It was in response to this additional argument that the court made two statements, which appellant now contends indicate an abuse of discretion, because the statements suggest that the court was arbitrary and used no discretion in denying the motion. These statements by the trial judge were "nothing in the law says he can" and "I'm running this court at this time and I'm not going to permit it."

These statements were made, but only after the judge had previously ruled and the attorneys continued to argue the motion. It is not unusual for a trial judge to be abrupt in his response to additional argument when an issue has already been decided. This is not an indication of arbitrary and capricious conduct, nor is it an indication that the judge did not exercise discretion in originally denying the motion.

Appellant, by his request to make the closing argument, was not seeking to appear as a witness, where he would be subject to cross-examination, but was seeking to suddenly become co-counsel with his two appointed counsel, or to proceed pro se. He had not testified at the sentencing phase, but he suddenly wanted to address the jury without being placed under oath and without being subjected to cross-examination. He had an absolute right to take the stand and make his plea to the jury as a witness in answer to questions asked by counsel, but he did not have an absolute right to suddenly become counsel. We have held that a district court need not permit a defendant to appear as co-counsel unless there is a showing of special need. *United States v. Lang,* 527 F.2d 1264, 1265 (4th Cir.1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976); *United States v. Sacco,* 571 F.2d 791 (4th Cir.), *cert. denied,* 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). Although under 28 U.S.C. § 1654 and the Sixth Amendment to the United States Constitution a defendant has a right of self-representation in federal court, this right is not absolute, and after a defendant has proceeded to trial with an attorney, the right to proceed pro se rests within the sound discretion of the trial court. *United States v. Lawrence,* 605 F.2d 1321 (4th Cir.1979), *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 770 (1980).

Appellant argues that under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), a defendant has a Sixth Amendment right of self-representation; however, this right is not absolute and may be waived or limited if not raised before trial. *See also United States v. Daugherty,* 473 F.2d 1113, 1123 (D.C.Cir.1972). *Faretta* does not deal with the situation of a defendant attempting to proceed pro se after trial has begun. In *United States v.*

*Dunlap,* 577 F.2d 867 (4th Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 174, 58 L.Ed.2d 166 (1978), we held that it was not an abuse of discretion for the trial judge to deny a defendant's request to make his closing argument after proceeding to trial with counsel and retaining counsel up to the time for closing argument.

On the present facts we find no abuse of discretion by the trial judge in refusing to allow Bassette to represent himself and make a closing argument to the jury.

### IX

We find no merit to the claim that the record does not demonstrate that the district court independently examined the state court record before denying Bassette's claim. The opinions of the district court exceeded sixty-five pages and considered all issues in depth, and this demonstrates a close examination of the state court record.

We have considered each of the issues raised and have examined with care all of the allegations of error. We are of the opinion that the district court's dismissal of the petition for writ of habeas corpus must be affirmed, and that Bassette received a constitutionally fair trial.

AFFIRMED.