**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 96-4855

HENRY HYMAN,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-95-27-ALL)

Argued: March 6, 1998

Decided: April 27, 1998

Before MOTZ, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and KEELEY, United States District Judge for the
Northern District of West Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Hunt Lee Charach, Federal Public Defender, Charleston,
West Virginia, for Appellant. Nancy Spodick Healey, Assistant
United States Attorney, Charlottesville, Virginia, for Appellee. **ON
BRIEF:** Robert P. Crouch, United States Attorney, Charlottesville,
Viginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Henry Hyman of two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C.A. § 841(a)(1) (West 1981). On appeal, Hyman challenges his conviction and sentence of 192 months imprisonment and 5 years supervised release. Hyman argues, inter alia, that the district court erred in denying him the opportunity to proceed pro se at the sentencing hearing, in not verifying that he had discussed the presentence report with counsel, and in its adoption of the presentence report. Finding no reversible error, we affirm.

I.

On February 10, 1995, Hyman applied for credit to purchase a $20,000 Cadillac Seville automobile from a car dealer. In so doing, Hyman left personal identification information with the car dealer. The dealer found the identification to be suspicious and contacted the Charlottesville police. The police then obtained information indicating that Hyman was wanted on an outstanding warrant in New York. Relying on this information, the police had the dealership lure Hyman back to the car lot based on the premise that his credit application had been approved. The police subsequently arrested Hyman based on the New York warrant. During the search incident to his arrest, the police seized 23.97 grams of cocaine base and $2,857 in cash from Hyman's person.

Two weeks later, on February 25, 1995, the police seized evidence in an unrelated search of a Charlottesville apartment in which Hyman resided with several other individuals. Pursuant to a search warrant, the police seized 14.76 grams of cocaine base from the battery compartment of a portable television located in the closet of a bedroom where the police found Hyman and his personal belongings. During

2

the course of that search, the police also found $1,022 in cash on Hyman's person, $100 of which was marked money a police informant had used earlier that same day to make a crack cocaine purchase from another individual who resided in the same apartment.

Based on the February 10 and 25 incidents, the Government charged Hyman with two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C.A. § 841(a)(1) (West 1981). The district court denied Hyman's motion to suppress the evidence seized from his person during both of the arrests. Trial began on June 18, 1996, and three days later a jury convicted Hyman on both counts. The district court then ordered the preparation of a presentence report and scheduled sentencing for October 1996.

Over the course of the proceedings, three different attorneys represented Hyman. His first appointed attorney, Steven Rosenfield, withdrew early in the proceedings because of a disagreement over the appropriate approach to take in the case. Hyman then retained his own attorney, Billy Ponds, who represented Hyman at the pretrial suppression hearing but failed to appear for trial due to illness. Citing irreconcilable differences, Ponds then asked to withdraw as counsel. The district court granted the motion over Hyman's objection. Hyman would not allow Ponds' co-counsel to represent him and insisted that he would represent himself before allowing such representation. However, when the court questioned Hyman about representing himself, Hyman indicated that he did not want to do so.

The district court then appointed Onzlee Ware, who represented Hyman through trial and sentencing. Several times during the trial, Hyman expressed dissatisfaction with Ware's performance. Occasionally, Hyman stated his belief that Ware was in a conspiracy with the government. In addition, when the court denied his motion to call the government's case agent as a witness, Hyman described the proceedings as a "lynching." As a result of this comment, the court held Hyman in summary contempt and sentenced him to imprisonment of 120 days.

After the trial's guilt phase, Hyman and Ware had no verbal communication until the sentencing hearing. Ware sent Hyman several letters, including a copy of the presentence report, and asked Hyman

3

to review the report and to respond with any objections to it. However, Hyman never responded to any of Ware's correspondence. Instead, Hyman wrote a letter to the district court, requesting that it dismiss Ware as counsel. The district court denied the request.

At the beginning of the sentencing hearing, the court asked both Ware and Hyman if they had reviewed the presentence report, and they both responded affirmatively. Ware did not prepare any objections to the presentence report but informed the court that Hyman might raise some issues. During the sentencing hearing, the court permitted Hyman to make any objections he had to the presentence report. Hyman then proceeded to object to the report's use of prior convictions of burglary and manslaughter in computing his criminal history category. He claimed that he did not commit the offenses and pointed out that they were committed by individuals with different names. The court overruled Hyman's objections based on evidence presented by the probation officer that Hyman had assumed aliases and was, in fact, the individual convicted of those other charges.

Hyman's final objection pertained to the conversion of $3,879 found on him during his arrests into an additional 19.93 grams of cocaine base for purposes of sentencing. This conversion was based on trial testimony from a DEA agent who testified that one-tenth of a gram of cocaine sold for approximately $20 in the Charlottesville area. The court rejected Hyman's objections, adopted the findings in the presentence report, and sentenced Hyman to 192 months imprisonment and 5 years supervised release.

II.

Hyman initially contends that the district court erred in not permitting him to represent himself at the sentencing hearing. Hyman argues that in denying his written request to represent himself pro se in the sentencing phase of his case, the district court violated his Sixth Amendment right to self representation.

In order to invoke one's right to proceed pro se , a defendant is required to make a clear and unequivocal invocation of this right. See Fields v. Murray, 49 F.3d 1024, 1029 (4th Cir. 1994) (en banc). In this instance, the record does not indicate that Hyman made such an

4

unequivocal statement. To the contrary, Hyman stated that he would "like counsel of my own choosing;" nowhere in his letter to the court did Hyman state explicitly that he wanted to represent himself. Despite the fact that Hyman's letter to the court did not clearly state that he wanted to proceed pro se, the district court seemed to assume he requested this relief and ruled that "defendant's motion to proceed pro se at this stage in the proceedings . . . is denied." Thus, for purposes of this appeal we, too, assume that Hyman had made the requisite unequivocal request to proceed pro se.

Although the Supreme Court has concluded that a defendant has a Sixth Amendment right of self-representation, this right is not absolute. See Faretta v. California, 422 U.S. 806 (1975). Moreover, once a defendant has proceeded to trial with counsel, we have consistently held that the right to proceed pro se lies within the discretion of the court. See, e.g., Bassette v. Thompson, 915 F.2d 932, 941-42 (4th Cir. 1990); United States v. Lawrence, 605 F.2d 1321 (4th Cir. 1979), cert. denied, 444 U.S. 1084 (1980); United States v. Dunlap, 577 F.2d 867 (4th Cir. 1977), cert. denied, 439 U.S. 858 (1978); cf. Faretta, 422 U.S. at 813 (the defendant attempted to proceed pro se before trial began).

Hyman does not dispute that his request to proceed pro se (if he did request this) occurred prior to the sentencing phase, after he had been represented by counsel throughout the guilt phase. In rejecting this request, the district court noted that Hyman had been represented by multiple lawyers during the proceedings and stated that his then-current counsel, Ware, had "provided excellent and professional representation." In addition, the court permitted Hyman to make his own objections and comments to the court at the sentencing hearing. In Bassette, we held that the district court had not abused its discretion when it refused to permit a defendant, who had been represented by counsel during the guilt phase, to proceed pro se at sentencing. Bassette, 915 F.2d at 941-42. In view of the fact that the trial court in Bassette provided far less rationale for its holding than the district court here, we cannot conclude that the court's denial of Hyman's request to represent himself at the sentencing phase constituted an abuse of discretion.

5

III.

Hyman challenges his sentence on several grounds. We review legal issues with respect to the sentence de novo. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). The district court's factual findings, however, are reviewed under a "clearly erroneous" standard. United States v. Strandquist, 993 F.2d 395, 401 (4th Cir. 1993). We accord "due deference" to the district court's application of the Sentencing Guidelines to the facts. Daughtrey, 874 F.2d at 217.

A.

Hyman contends that the district court committed reversible error at sentencing because it failed to comply with Rule 32 of the Federal Rules of Criminal Procedure by not verifying that he and his attorney had not only read but also discussed the presentence report. Fed. R. Cr. P. 32.

Because this argument was never made before the district court, our review is for plain error. See United States v. Lockhart, 58 F.3d 86, 89 (4th Cir. 1995) (citing United States v. Olano, 507 U.S. 725 (1993)). Before vacating this sentence we must determine whether: 1) an error was committed; 2) the error was plain; and 3) the error affected Hyman's substantial rights. See Olano , 507 U.S. at 731. In addition, if these requirements are satisfied, we then must determine whether the error is one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Lockhart, 58 F.3d at 88 (quoting Olano, 507 U.S. at 731).

Rule 32(c)(3)(A) provides that, prior to imposing a sentence, "the court must . . . verify that the defendant and defendant's counsel have read and discussed the presentence report." Fed. R. Cr. P. 32(c)(3)(A). We have interpreted this rule to require that there be "evidence in the record from which one could reasonably infer" that defendant and counsel have read and discussed the report. See United States v. Miller, 849 F.2d 896, 897 (4th Cir. 1988).

In this case, the district court initially inquired whether "Mr. Hyman, together with both Counsel, had full opportunity to review

6

the pre-sentence report." Hyman and his counsel responded affirmatively. Without more, this question and answer might be read to satisfy the requirements to Rule 32(c)(3)(A). However, when considered with Ware's later statement that he had forwarded the report to Hyman and asked for, but never received, a response from Hyman, it is clear that Hyman and his counsel had not "discussed" the presentence report. Thus, the record indicates that the district court verified that both Hyman and his attorney had <u>read</u> the presentence report; but the court had knowledge that Hyman and his attorney had not <u>discussed</u> the report.

However, regardless of the completeness of the district court's inquiry, clearly the reason Hyman and his counsel did not communicate with respect to the presentence report was due solely to Hyman's own actions. At sentencing, Hyman's attorney told the court that he had sent Hyman the presentence report and requested correspondence. In fact, the record reflects that Ware sent Hyman"several letters [in] trying to correspond with him." Thus, the court was on notice that Hyman was responsible for the fact that he and Ware had not "discussed" the report. As we have stated in other contexts, a defendant cannot create a lack of communication between himself and his counsel and then rely on this lack of communication. <u>See United States v. Morsley</u>, 64 F.3d 907, 918 (4th Cir. 1995) (denying defendant's request for substitute counsel because "any difficulties [defendant] was experiencing were due to his own belligerence").

Furthermore, even if Hyman had not been responsible for the lack of communication with his counsel, resentencing would not be required here. As we held in <u>Lockhart</u>, if the defendant fails to show that the error would have affected his sentence then remanding for resentencing "would be a fruitless exercise." <u>Lockhart</u>, 58 F.3d 86, 89 (4th Cir. 1991) (<u>quoting Lewis</u>, 10 F.3d at 1092). In this case, the court permitted Hyman, without his counsel, to make any arguments that he wanted with respect to the presentence report. In fact, Hyman raised several issues that the court considered before imposing sentence. Based on the information that it was Hyman's own decision not to communicate with his attorney, the district court attempted to ensure that Hyman received a fair sentencing hearing by permitting him to make his own objections to the presentence report. Thus, as

7

in Lockhart, Hyman "has failed to show that the [Rule 32(c)(3)(A)] error would have affected his sentence." 58 F.3d at 89.

In sum, the district court did not plainly err in failing to verify that Hyman and his counsel had discussed the presentence report.

B.

When the district court sentenced Hyman, it adopted the presentence report's recommendation that the money found on Hyman be converted into its cocaine base equivalent under the§ 2D1.4 of the Sentencing Guidelines. This section permits the sentencing judge to approximate the quantity of drugs involved if the amount of a drug seized does not reflect the scale of the offense. U.S.S.G. § 2D1.4, Note 2. We have previously approved similar conversions of seized currency into its drug equivalent where there was evidence of a connection between the money and drug transactions. See United States v. Hicks, 948 F.2d 877, 881-83 (4th Cir. 1991) (there was "ample evidence on which the district court could have found that all of the money was the proceeds of drug transactions"). Nevertheless, Hyman asserts the district court erred when it converted the money found to its drug equivalent in this case.

First, Hyman contends that the district court did not make a finding on his objection during the sentencing hearing as to the relevant drug weight used in determining the sentencing guideline calculations. Specifically, Hyman claims that the court violated Rule 32(c)(1) of the Federal Rules of Criminal Procedure and § 6A1.3(a) of the Sentencing Guidelines when it did not make express findings regarding the conversion of money to drugs. Fed. R. Cr. P. 32(c)(1); U.S.S.G. § 6A1.3(a). But the court explicitly adopted the pre-sentence report; and we have held that the adoption of a pre-sentence report satisfied the need for findings "when the context of the ruling makes clear that the district court intended [by the adoption] to rule on each of the alleged factual inaccuracies." United States v. Walker, 293d 908, 911 (4th Cir. 1994). Thus, we clarified that "a sentencing court need not articulate a finding as to disputed factual allegations with minute specificity." Rather, "[s]imply adopting the [pre-sentencing report's] findings in toto is sufficient." Id.

8

Hyman also maintains that the evidence fails to support the findings the court adopted from the presentence report. We note that neither Hyman nor his attorney ever made a clear objection to the conversion of money to drugs in the presentence report. Indeed, Hyman's counsel never made any objection at the sentencing hearing concerning the conversion of money to drugs. As for Hyman himself, during the course of the sentencing hearing, the court informed him that it was "going to throw the reins over the dashboard. You can go as long as you want. Take off and tell me everything you want to tell me right now." After making several objections to the presentence report without mentioning the conversion argument, Hyman told the court that he was "finished." Only later, when the court was ready to pronounce sentence, did Hyman for the first time raise a question about the money found on his person; he asked, "how does it get to be criminal?" After the court responded that it was "not going to get into that," Hyman acknowledged that he was ready for his sentence to be pronounced.

Assuming that this constitutes an objection to the conversion, the record indicates that the district court did not err in converting the money to drugs. At the time of Hyman's arrest on February 10, 1995, the police found $2,857 on Hyman's person along with approximately 24 grams of cocaine base. The evidence seized in the unrelated February 25 search of the apartment in which Hyman resided, resulted in the police finding $1,022 on Hyman's person, $100 of which was marked money from a police informant used to make a cocaine purchase from another individual who also resided in the same apartment. An agent testified that a gram of cocaine base would sell for approximately $20 in the Charlottesville area; the presentence report findings converting the entire $3,879 into its drug equivalent.

Hyman maintains that the court had no basis for converting the money into its drug equivalent; he asserts that he was employed and had a bank account that constituted the source of this money. On the credit application Hyman filled out at the car dealership, when he sought to purchase the $20,000 Cadillac Seville, Hyman provided his address and stated that he earned an annual salary of $47,500 as a marketing manager and had worked for the same employer for six years. However, at trial the Government severely impeached his account. Hyman ultimately conceded in trial testimony that the

9

address he provided the car dealer was false, that he did not know his salary, and that he had worked for his most recent employer as "an assistant to an insurance broker" for less than a year, and that he could not remember if he had paid any income taxes. Moreover, Hyman testified that he could not recall the city in which the branch of his bank was located. Finally, the district court noted that Hyman refused to provide any financial information and employment history to the probation officer completing the presentence report. This refusal and the evidence at trial led the court to determine that Hyman was "not in a position to pay a fine."

Although the above evidence was not abundant, it was sufficient to sustain the district court's conversion decision as based on the preponderance of the evidence. Cf. United States v. Terry, 916 F.2d 157, 161 (4th Cir. 1990) ("Without an affirmative showing [by the defendant that] the information is inaccurate, the court is free to adopt the findings of the presentence report without more specific inquiry or explanation").

C.

Hyman also argues that the district court erred in adopting the presentence report's attribution to him of criminal history points for two prior convictions. We review factual determinations relating to sentencing for clear error. United States v. Blake , 81 F.3d 498, 503 (4th Cir. 1996).

Hyman's main contention is that the Government did not provide sufficient evidence that he was, in fact, the person previously convicted of the crimes listed in the presentence report. The record, however, indicates that there was sufficient evidence linking Hyman to those convictions.

First, the probation officer testified that Hyman, under a different name, had previously been convicted of burglary in New York and manslaughter in Washington, D.C. At sentencing, Hyman did not deny that he had been convicted of manslaughter, but rather maintained that the presentence report attributed the wrong date to this conviction. With respect to the burglary, the probation officer testified that "[t]here's a cross-reference to Henry Hyman and the other aliases

10

that come back identifying him through fingerprint, social security, date of birth and those types of cross-reference information that's used by the FBI."

Ultimately, the district court concluded that the probation officer's testimony and the information from the New York Parole Commission "appears to be trustworthy," despite Hyman's assertions to the contrary. The district court did not clearly err in making this determination.*

IV.

Hyman has filed two lengthy pro se briefs, making numerous additional arguments on appeal. The Supreme Court has stated that a defendant "has no absolute right to argue his own appeal or even to be present in the appellate court." Price v. Johnston, 334 U.S. 266, 285 (1948). In United States v. Gillis, 773 F.2d 549 (4th Cir. 1985), we permitted the defendant to submit a supplemental pro se brief, concluding that this provided the defendant with "any `right' he has to self-representation on appeal." Id. at 560. In Gillis, however, the defendant had filed a motion to proceed pro se on appeal, and the court determined that the complexity of the issues warranted the appointment of counsel. In contrast here, Hyman actively filed a request for the appointment of appellate counsel because he stated that he "lack[ed] the legal training to proceed as a pro se litigant."

Nevertheless, we have carefully examined Hyman's pro se arguments and have concluded that they are meritless. His principal contention is that the police officers who arrested him at the car dealership on February 10, 1995 did not have the requisite probable

_____

*Hyman also maintains in his formal brief that he should receive a new trial based on grounds of ineffective assistance of counsel. He does not dispute, however, that his ineffective assistance claim "is not yet ripe for review by the Court." Brief of Appellant at 23. We agree with Hyman's assessment concerning the ripeness of this claim. An ineffective assistance of counsel claim in this instance should be raised collaterally through a petition for habeas corpus rather than on direct appeal. See United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991), cert. denied, 503 U.S. 992 (1992).

cause to do so. Hyman also raised this probable cause issue several times during the course of trial. This contention ignores patrol officer Gregory Irwin's testimony that he determined through the credit information Hyman provided the auto dealership that there was an outstanding warrant on file in New York for Hyman. Irwin not only verified this information by computer, but he telephoned New York to confirm it. The information Irwin received from New York provided a description of Hyman, including his social security number, date of birth, height, weight and the fact that Hyman had a scar on his neck. Prior to arresting Hyman at the dealership, Irwin asked Hyman several questions, including whether or not he had such a scar on his neck. Based on the information Irwin received from New York and from Hyman himself, there is no question that even if Hyman was not the individual wanted on charges in New York, the arresting officers had probable cause to arrest him.

V.

For all of these reasons, the judgment of the district court is, in all respects,

AFFIRMED.

12