Thomas Lee ROYAL, Jr., Petitioner,

v.

**J.D. NETHERLAND, Warden**[1],
**Respondent.**

Civil Action No. 3:96CV956.

United States District Court,
E.D. Virginia,
Richmond Division.

May 5, 1998.

1. J.D. Netherland, the original respondent, is no longer the warden of the facility where Chichester is confined. S.V. Pruett is the current Warden.

Robert J. Anello, Catherine M. Foti, Diana D. Parker, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, Barbara L. Hartung, Richmond, VA, for Petitioner.

Katherine Pharis Baldwin, Office of Atty. Gen., Richmond, VA, for respondents.

### MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on Respondent's Motion To Dismiss the petition for a writ of habeas corpus and Petitioner's Motion For Order Compelling Discovery. For the reasons set forth below, the Court will GRANT Respondent's Motion To Dismiss in its entirety and will DENY Petitioner's Motion For Order Compelling Discovery.

## I. FACTUAL BACKGROUND

Mr. Royal was convicted of the capital murder of Kenneth Wallace, a Hampton City police officer. The Virginia Supreme Court, affirming Royal's conviction and sentence on direct appeal, stated the facts of the case as follows:

> On Monday, February 21st, 1994, Thomas Royal, Yancy M. Mitchener, Eldred Acklin, and Willie Sanders met in the vicinity of Chesapeake Court Apartments near Wythe Shopping Center. Thomas Royal handed each of the other three a gun with the intention to kill Hampton police officer Curtis Cooper. These four persons started to cross Wythe Shopping Center and they did not see Officer Cooper but did see Officer Kenneth E. Wallace of the Hampton Police Department.

> Thomas Royal pursued Officer Wallace, followed by Yancy M. Mitchener and Eldred Acklin. Willie Cardell Sanders hung back. Thomas Royal encountered Officer Wallace and fired two shots from a .380 caliber handgun at Officer Wallace while Officer Wallace was seated in his police cruiser on Pocahontas Place in Hampton, Virginia. Thomas Royal fled. Officer Wallace died as a result of a wound inflicted by Thomas Royal.

> Yancy M. Mitchener and Eldred Acklin both fired at the marked police car hitting the car but not Officer Wallace. Both Mitchener and Acklin then fled following Thomas Royal. Royal, Mitchener, and Acklin rejoined Sanders back at the Chesapeake Court Apartments. All four eventually fled Hampton that night and spent it in a motel at Norfolk.

*Royal v. Commonwealth,* 250 Va. 110, 458 S.E.2d 575, 576 (1995), *cert. denied,* 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996). The foregoing findings of fact are binding on this Court. *See* 28 U.S.C. § 2254(e)(1); *Pope v. Netherland,* 113 F.3d 1364, 1364 (4th Cir.) (citing *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), *cert. denied,* —— U.S. ——, 118 S.Ct. 16, 138 L.Ed.2d 1048 (1997).

## II. PROCEDURAL HISTORY

On September 19, 1994, Royal pleaded guilty in the Circuit Court of the City of Hampton to the capital murder of Officer Wallace and to one count of using a firearm in the commission of a felony. After a separate sentencing proceeding, the Court found Royal to be a future danger and imposed a sentence of death for capital murder and three years imprisonment on the firearm charge. Royal's convictions and sentence were affirmed unanimously by the Virginia Supreme Court on June 9, 1995. *Royal,* 250 Va. 110, 458 S.E.2d 575 (1995). Royal filed a petition for a writ of certiorari in the United States Supreme court that was denied on

January 22, 1996. *Royal v. Virginia*, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996).

In July, 1995, pursuant to Va.Code Ann. § 19.2–163.7, the Hampton County Circuit Court appointed counsel to represent Royal in a state habeas corpus proceeding. Royal filed a petition for a writ of habeas corpus in the Virginia Supreme Court on March 22, 1996. On June 18, 1996, the Court dismissed the petition. Royal's petition for rehearing was denied on September 13, 1996.

Pursuant to Va.Code Ann. § 53.1–232.1(i), Royal was scheduled for an execution on November 26, 1996. On November 19, 1996, this Court stayed Royal's execution and appointed counsel to represent him in this action. Royal filed his petition in this court on April 28, 1997 and filed an Amended Petition ("Petition") on May 20, 1997.

## III. CLAIMS PRESENTED

### A. Claims Presented In State Court

I. The guilty plea was not knowingly and voluntarily made:

 A. He was not informed he was waiving a sentencing jury;

 B. There was no factual basis for the plea, and he relied on "false" evidence;

II. The death sentence violated due process because it was based on evidence admitted in violation of a plea agreement;

III. The confession violated the Fifth and Sixth Amendments;

IV. The trial court unconstitutionally shifted the burden to Royal to disprove future dangerousness aggravator and future dangerousness aggravator is vague;

V. The trial court failed to give mitigating effect to evidence in Royal's favor;

VI. The trial court erred by allowing prosecution to present evidence of the capital murder during sentencing instead of limiting the prosecution's evidence on future dangerousness to the past criminal record of defendant;

VII. The evidence was insufficient to prove that Officer Wallace was killed for the purposes of interfering with his law enforcement duties;

VIII. The Commonwealth failed to timely produce exculpatory and impeachment material:

 A. Officer Richards planted evidence to induce Royal to confess;

 B. Statements possibly made to police by Royal's three accomplices;

IX. Virginia's former statutory capital punishment scheme violated due process and the Eighth Amendment because it did not provide for the option of life without parole:

 A. Virginia system does not produce reliability in sentencing;

 B. Virginia's capital punishment scheme violated the Eighth Amendment;

 C. Virginia's capital punishment scheme, as applied to Royal, resulted in an arbitrary and capricious sentencing determination;

 D. Virginia's capital punishment scheme, by creating anomalous situation in which non-recidivist murderers will be sentenced more severely than recidivist murderers violated the Equal Protection Clause;

 E. Royal's death sentence is excessive and unconstitutional because a sentence of life imprisonment without possibility of parole with adequately incapacitate Royal;

X. The trial court erred in denying the motion for change of venue:

 C.[2] The court refused to use voir dire questions necessary to determine whether Royal could secure a fair trial;

XI. The trial court unconstitutionally sentenced Royal out of passion and prejudice;

---

**2.** Sub-headings (A) and (B) under Claim X have been omitted as they are argument headings, not constitutional claims.

XII. The trial court denied the motion to recuse;

XIII. The Virginia Supreme Court provides no meaningful appellate review;

XIV. The death penalty in Virginia is discriminatory and cruel and unusual

XV. Counsel were ineffective:

 A. Pre-trial

 1. Failed to investigate or pursue defenses:

 a. Triggerman defense;

 b. Lack of intent to interfere with Officer Wallace's performance of his official police duties;

 c. Intoxication and mental disabilities;

 d. Lack of intent for capital murder;

 2. Failed to advise Royal of possible defenses and rights waived by pleading guilty;

 3. Failed to introduce the signed request for counsel form;

 B. The state failed to provide competent counsel:

 1. Only one attorney at the preliminary hearing;

 2. Richardson was not qualified;

 3. Richardson was a part-time judge;

 4. Pre-trial preparation was insufficient;

 5. Failed to request funds for investigation;

 6. Failed to request that Royal's first-degree murder charge be tried after the capital murder charge;

 7. Failed to seek recusal of the judge until after the sentencing;

 C. Ineffective at the plea:

 1. Stipulated to inaccurate facts;

 2. Failed to limit evidence to be introduced at sentencing;

 D–1.[3] Ineffective at sentencing:

 1. Failed to argue that Court could not sentence Royal to death because stipulation did not establish requisite elements of capital murder;

 2. Failed to present or raise evidence:

 a. Psychiatric and social background;

 b. Intoxication;

 D–2. Ineffective on appeal; and

XVI. Ineffective assistance of mental health expert.

### B. Claims Not Presented In State Court

XVII.[4] Due Process was violated by the use of the planted evidence;

 A. The government planted evidence;

 B. Royal's requests for assistance of counsel were denied during his interrogation;

 C. The government used the planted evidence to extract a confession;

 D. The government's general use of planted evidence in its investigation and prosecution;

XVIII. Royal is factually innocent:

 A. Not the triggerman;

 B. Lack of premeditation; and

 C. Actual innocence of the death penalty.

### IV. THE APPLICABILITY OF THE 1996 ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT

On April 24, 1996, over one year before Royal filed his federal habeas petition, the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (the "AEDPA"), became effective. Title I of the Act, entitled "Habeas Corpus Reform," substantially alters the substantive law governing habeas corpus petitions. Sections 101 to 106 of the Act modify pre-

---

**3.** Royal presents two claims "D." The Court has labeled these claims as "D–1" and "D–2" for clarity.

**4.** The claims not presented in state court are labeled I and II in the petition. The Court has renumbered them to avoid confusion.

existing habeas corpus procedures contained in Chapter 153 of the Judicial Code, 28 U.S.C. §§ 2241–2255. Section 107(a) of the Act enacts a new Chapter 154, 28 U.S.C. §§ 2261–2266, which applies to habeas petitions in capital cases.

### A. Applicability of Chapter 154 Amendments

For the reasons set forth in Judge Payne's well-reasoned opinion in *Satcher v. Netherland,* 944 F.Supp. 1222, 1238–40 (E.D.Va. 1996), *aff'd in part rev'd in part sub nom. Satcher v. Pruett,* 126 F.3d 561 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 595, 139 L.Ed.2d 431 (1997), Chapter 154 of the AEDPA is inapplicable to Royal's petition.

### B. Applicability of Chapter 153 Amendments

Chapter 153 of the Act, §§ 101–106, effects a number of procedural changes to previous habeas corpus statutes codified in Chapter 153. Of particular relevance to Royal's petition is § 104 which substantively changes the standards of review under 28 U.S.C. § 2254.[5] Unlike Chapter 154, the Chapter 153 amendments are not made explicitly applicable to petitions pending when the AEDPA took effect. In *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the U.S. Supreme Court recently held that the amendments do not apply to habeas corpus cases that were pending when the AEDPA became effective, thereby resolving a split among the circuits. Applying the amendments to these pending cases, the U.S. Supreme Court held, violates principles against retroactive application of laws. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The U.S. Supreme Court expressly found that "the amendments to chapter 153 [apply] only to such cases as were filed after the statute's enactment." *Lindh,* 521 U.S. at ——, 117 S.Ct. at 2062.

Royal attempts to place his federal habeas petition in the category of cases pending when the AEDPA became effective by arguing that he filed a state habeas petition before the enactment of the AEDPA and, therefore, applying the amendments to his federal habeas petition would be impermissible retroactive under *Landgraf.* Indeed, if Royal's federal habeas petition had been pending when the AEDPA took effect, this Court could not apply the Chapter 153 amendments pursuant to *Lindh.* Royal, however, filed his federal habeas petition over one year after the passage of the AEDPA. His strained argument—that the amendments would have an impermissible retroactive effect on his federal habeas petition merely because he went through state post-conviction proceedings with the assumption that he would enter federal review under the old 28 U.S.C. § 2254—is contrary to the U.S. Supreme Court's directive in *Lindh.* Therefore, the Chapter 153 amendments enacted over one year before Royal filed his federal habeas petition will govern his claims.

### V. EXHAUSTION AND PROCEDURAL DEFAULT STANDARDS

This Court's review of Royal's petition for habeas corpus is restricted to an inquiry of whether his confinement and sentence are in violation of the United States Constitution and federal law. 28 U.S.C. § 2241(c)(3). Before this Court reaches the merits of any claim, the petitioner must demonstrate that he has exhausted all state court remedies. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). All of Royal's claims are "exhausted" within the meaning of 28 U.S.C. § 2254(b), either because they were presented to the Virginia Supreme Court on direct appeal or on state habeas, or because they never have been presented to the Virginia Supreme Court and cannot be presented to that court now. *See* Va.Code Ann §§ 801–654(B)(2) (generally prohibiting successive petitions); Va.Code Ann § 801–654.1 (limiting death row inmates

---

5. Specifically, § 104 limits the grounds on which petitions may be granted (28 U.S.C. § 2254(d)), requires greater deference to state court findings of fact (28 U.S.C. § 2254(e)(1)), limits the availability of evidentiary hearings in a habeas court (28 U.S.C. § 2254(e)(2)), and eliminates ineffectiveness or incompetence of post-conviction counsel as a ground for relief under 28 U.S.C. § 2254 (28 U.S.C. § 2254(i)).

to one habeas petition filed no later than 60 days after denial of certiorari on direct appeal).

Furthermore, a federal habeas petitioner is not entitled to federal review of claims which are procedurally defaulted, unless "the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The law governing procedural default prevents a federal district court from reviewing claims held by a state court to be defaulted under an independent and adequate state procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Likewise, a federal district court may not review claims never presented to a state court. *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 2080–81, 135 L.Ed.2d 457 (1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir.1990), *cert. denied*, 499 U.S. 982, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991).

The Supreme Court of the United States has recognized at least three categories of "cause" which are sufficient to overcome a state procedural default: (1) counsel's inability to know of a legal or factual issue; (2) interference by the prosecution with the habeas petition; and (3) ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In addition, a federal court may grant habeas relief in the "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

An action or omission by a defendant's lawyer constitutes "cause" for a procedural default only if it rises to the level of constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Similarly, ineffective assistance of counsel only constitutes "cause" where the ineffectiveness is itself an independent claim for relief. *George v. Angelone*, 901 F.Supp. 1070, 1087 (E.D.Va.

1995) (citing *Justus v. Murray*, 897 F.2d 709 (4th Cir.1990)), *aff'd*, 100 F.3d 353 (4th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 854, 136 L.Ed.2d 829 (1997).

When a petitioner who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims, "a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default" if the petitioner is able to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *see also, Schlup*, 513 U.S. at 326–27, 115 S.Ct. 851 (holding that the *Carrier* "probably resulted" standard rather than the more stringent *Sawyer* standard must govern the miscarriage of justice inquiry when a petitioner who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims).

To establish the requisite probability for actual innocence of the crime under the *Carrier* standard,

> the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice.... The *Carrier* standard thus ensures that petitioner's case is truly "extraordinary," while still providing petitioner a meaningful avenue by which to avoid manifest injustice.

*Schlup*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (citations omitted). "Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S.Ct. 851.

Not only may a federal court excuse a default upon a finding that the petitioner is actually innocent of the crime for

which he is convicted, but also upon a finding that the petitioner is ineligible for the death penalty. A federal court may review a capital defendant's procedurally defaulted claim if the petitioner can show by "clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty" under state law. *Sawyer v. Whitley*, 505 U.S. 333, 350, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

Respondent argues, citing *Calderon v. Thompson*, ___ U.S. ___, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), that the more stringent standard for actual innocence contained in § 2254(e)(2)(B) applies to Petitioner's "actual innocence" claims rather than the more lenient standard articulated in *Schlup*. There is no direct authority for Respondent's argument. Although *Calderon* may be instructive, it does not directly address this issue. The Court's holding in *Calderon* arises in the context of a petition brought under 28 U.S.C. 2244 instead of § 2254, and the Supreme Court actually declines to apply the more stringent standard for actual innocence because the petitioner's case was not governed by the AEDPA. This Court declines to extend *Calderon* and apply the § 2254(e)(2)(B) standard for considering actual innocence because Royal is not entitled to any relief under the more lenient standard articulated in *Schlup*. Furthermore, the standard for establishing actual innocence of the death penalty to excuse a default articulated in *Sawyer* is virtually identical to the § 2254(e)(2)(B). Therefore, the Court will use the standards in *Schlup* and *Sawyer* to determine whether Petitioner can establish actual innocence of the crime for which he was convicted or actual innocence of the penalty to which he was sentenced.

## VI. STANDARD OF REVIEW FOR CLAIMS ADDRESSED ON THE MERITS

### A. Deference to State Court Judgments

■ Under the recently revised Title 28 United States Code § 2254, a federal court may not grant a writ of habeas corpus based

on any claim that was adjudicated on the merits in state court unless the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Although this new standard requires more deference to state court findings, it is not a complete abdication of the federal court's duty to provide meaningful review.

### B. Harmless Error

■ Federal habeas courts routinely conduct harmless error analysis of errors occurring in capital cases. *See, e.g., Cabana v. Bullock*, 474 U.S. 376, 391 n. 6, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986); *Smith v. Dixon*, 14 F.3d 956, 978 (4th Cir.) (en banc), *cert. denied*, 513 U.S. 841, 115 S.Ct. 129, 130 L.Ed.2d 72 (1994). In federal habeas corpus proceedings, an error is deemed harmful only if it "had substantial and injurious effect or influence in determining the jury's verdict." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quotation omitted)).

### C. New Rule Doctrine

■ Where a federal habeas petitioner seeks relief by application of a constitutional rule, the Court must examine the rule to determine whether it had been announced at the time the petitioner's conviction became final or whether the petitioner is seeking an extension of longstanding precedent. As a general matter, federal courts may not grant state prisoners relief in collateral proceedings if to do so would create a "new rule" of constitutional law, subject to two narrow exceptions.[6] *See Teague v. Lane*, 489 U.S. 288,

---

6. Under *Teague*, a "new rule" should be applied

retroactively if (1) it "plac[es] certain kinds of

109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (establishing two exceptions to the new rule doctrine). Since *Teague,* the U.S. Supreme Court has articulated the test to determine whether a rule is a "new rule" such that it should not be applied retroactively:

> Though we have offered various formulations of what constitutes a new rule, put "meaningfully for the majority of cases, a decision announces a new rule 'if the result was not dictated by precedent existing at the time the defendant's conviction became final.' "

*Gilmore v. Taylor,* 508 U.S. 333, 340, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (citation omitted).

 Where the petitioner requests that the Court adopt a constitutional rule not previously announced, the Court must first determine whether such a rule would be retroactively applied if adopted. If the court determines that the rule, if adopted, would not be retroactively applied, then the Court should dismiss the claim without reaching the merits. *See Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Under *Teague,* a court faced with this situation should proceed in three steps. First, the Court must ascertain the date on which the conviction and sentence became final. Second, the Court must determine whether a state court considering the defendant's claim on that date would have felt compelled by existing precedent to conclude that the rule sought by the petitioner was required by the Constitution. Third, even if the Court determines that the petitioner seeks the benefit of a new rule, the Court must decide whether the rule falls into one of the two *Teague* exceptions. *See Caspari v. Bohlen,* 510 U.S.

383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994).

 Even if the Court determines that the petitioner does not seek to apply or adopt a "new rule", the Court must still "inquire whether granting the relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent." *Stringer v. Black,* 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). The Court must be mindful, however, that the "new rule" doctrine is not necessarily implicated every time the Court applies an established standard to a new set of facts. *See id.*

### D. The Court's authority to consider new facts offered for the first time in federal habeas proceedings and grant an evidentiary hearing

 A § 2254 petition is ordinarily limited to the factual record developed in state court proceedings, as the amended § 2254(e)(2) limits a petitioner's ability to present evidence in a federal habeas proceeding that was not considered by the state court.[7] Specifically, § 2254(e)(2), as amended, provides that a petitioner may not present evidence in a federal habeas proceeding that was not considered by the state court if he "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). While the Fourth Circuit has not yet addressed the meaning of § 2254(e)(2), Judge Ellis in this District has carefully considered the proper interpretation of § 2254(e)(2) as amended and concluded the following, which this Court adopts:

> [A]n applicant "fails" when he does not take or seek the opportunity to develop

---

primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) it is a "watershed rule[ ] of criminal procedure," implicating the fundamental fairness and accuracy of the criminal proceeding. *Teague v. Lane,* 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

7. Section 2254(e)(2) provides that:

[i]f an applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
 (a) the claim relies on–

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(b) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

evidence in a state court proceeding. This is where (e)(2) applies. And this is where (e)(2)(A) may forgive the failure if new facts or a retroactive change in constitutional law form the basis of a claim. In contrast, an applicant does not "fail" where he seeks, but is denied, the opportunity to develop facts in state court. In this event, the rigorous standard of § 2254(e)(2) will not apply.

*Cardwell v. Netherland,* 971 F.Supp. 997, 1011 (E.D.Va.1997).

Thus, if Petitioner did not take or seek the opportunity to develop evidence in his state habeas petition related to a particular claim, he has "failed" to develop the factual basis of the claim in state habeas court. *See* 28 U.S.C. § 2254(e)(2); *Cardwell v. Netherland,* 971 F.Supp. 997, 1011 (E.D.Va.1997). As a consequence of any such failure, the Court is precluded from considering new facts presented for the first time in federal habeas proceedings or granting an evidentiary hearing for the consideration of new facts.

## VII. CLAIMS PRESERVED FOR FEDERAL HABEAS REVIEW

### A. *Claims barred by Virginia Supreme Court pursuant to Hawks v. Cox*

■ Although the Virginia Supreme Court ruled that Claim VI was procedurally defaulted pursuant to *Hawks v. Cox,* 211 Va. 91, 175 S.E.2d 271 (1970), that fact alone does not preclude review by this Court. *Hawks* provides that absent a change of circumstances, a previous determination by either a state or federal court of a claim raised in a repetitive habeas corpus petition will be conclusive. "*Hawks,* however, is not a true procedural default rule; rather, it is more in the nature of a collateral estoppel rule. *Hawks* cannot prevent federal habeas review of federal constitutional claims properly raised on direct appeal." *Turner v. Williams,* 35 F.3d 872, 890 (4th Cir.1994) (citing *Ylst v. Nunnemaker,* 501 U.S. 527, 533–39 (1986)), *overruled on other grounds, O'Dell v. Netherland,* 95 F.3d 1214 (4th Cir.1996). Because Claim VI was raised on direct appeal, it has been preserved for federal review on the merits.

In Claim VI, Petitioner argues that the trial court erred by allowing the Commonwealth to introduce evidence regarding the capital crime for the purpose of showing future dangerousness. According to Petitioner, Virginia's capital sentencing process, as reflected by Virginia Code § 19.2–264.2(1), limits the evidence on future dangerousness to "the past criminal record of the defendant." Petitioner contends that because the Commonwealth conceded that it was not proceeding on a vileness theory, it should have been limited to evidence of Petitioner's criminal history. Petitioner further argues, citing *Woodson v. North Carolina,* 428 U.S. 280, 303–04, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) that the trial court's decision, over trial counsel's objection, to permit the Commonwealth to introduce evidence of the crime violated Due Process and the Eighth Amendment.

On direct appeal, the Virginia Supreme Court rejected Royal's claim regarding the interpretation of Virginia Code § 19.2–264.2(1), stating that "[b]oth subsections B and C of Code § 19.2–264.4 specifically provide that evidence of the circumstances of the offense may be considered." *Royal,* 458 S.E.2d at 577–78. The Virginia Supreme Court also rejected Petitioner's argument that the statutory scheme violates the constitutional requirement of individualized sentencing. In support of its conclusion, the court stated that

> [w]here the sentencing body is required to find a statutorily prescribed aggravating factor to qualify a defendant for consideration of the death penalty, "[t]he aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or both)."

*Royal,* 458 S.E.2d at 577–78 (citing *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994)).

■ This Court has no authority to review the Virginia Supreme Court's determination on the state law question, *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions"). Furthermore, the Court concludes that the state court's holding

regarding the Virginia statute's compliance with the constitutional requirement of individualized sentencing is not contrary to clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d). Therefore, the Court will dismiss Claim VI.

**B. CLAIMS REVIEWED ON THE MERITS BY VIRGINIA SUPREME COURT**

The only claims reviewed on the merits by the Virginia Supreme Court were those regarding ineffective assistance of his trial and appellate counsel. Some of Petitioner's ineffective assistance of counsel claims are procedurally defaulted in state court pursuant to *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), and others are defaulted in this Court pursuant to *Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074, 2080–81, 135 L.Ed.2d 457 (1996). Petitioner's defaulted ineffective assistance of counsel claims are addressed separately below in the sections devoted to the cause and prejudice analysis of claims procedurally defaulted under *Slayton* and *Gray,* respectively. The Court addresses here each of the ineffective assistance of counsel claims that are not procedurally defaulted.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the standard for determining whether a criminal defense lawyer has acted so egregiously as to deprive the defendant of his Sixth Amendment right to counsel. Petitioner must establish two elements: first, that counsel's performance was deficient; and second, that the deficient performance prejudiced the defendant. *Id.* at 687, 104 S.Ct. 2052. This is an exacting standard. *See, e.g., Washington v. Murray,* 4 F.3d 1285, 1290 (4th Cir.1993) ("[p]etitioner must show a reasonable probability, not just a remote possibility, that introduction of this evidence would have altered the result of his trial.").

Under the first prong, the Court "must appreciate the practical limitations and tactical decisions that trial counsel faced." *Bunch v. Thompson,* 949 F.2d 1354, 1363 (4th Cir.1991), *cert. denied,* 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992). Rather

than second-guessing decisions which are the result of trial tactics or strategy, the reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see also, Williams v. Dixon,* 961 F.2d 448, 451 (4th Cir.1992), *cert. denied,* 506 U.S. 991, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992).

The second prong of the *Strickland* test, the "prejudice" inquiry, requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* Counsel's errors, even if unreasonable, must be shown to have "actually had an adverse effect of the defense." *Id.* at 693, 104 S.Ct. 2052. In the context of a guilty plea proceeding, the prejudice component of the *Strickland* test requires a showing that but for counsel's unreasonable advice to plead guilty, there is a reasonable probability that the petitioner would have insisted on a trial. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Savino v. Murray,* 82 F.3d 593, 599 (4th Cir.), *cert. denied,* 518 U.S. 1036, 117 S.Ct. 1, 135 L.Ed.2d 1098 (1996). Furthermore, the "reasonable probability" is based upon an objective analysis of what the petitioner would have done at the time rather than upon the petitioner's subjective claim that he would have gone to trial. *See Hooper v. Garraghty,* 845 F.2d 471, 475 (4th Cir.), *cert. denied,* 488 U.S. 843, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988).

█ The Supreme Court of Virginia has considered and rejected the ineffective assistance of counsel claims discussed below. Under the standard set forth in § 2254(d), this Court's review is limited to determination of whether or not the Supreme Court of Virginia's resolution of these claims was a reasonable application of federal law, such as *Strickland,* to the facts of Royal's claims. However, the Court notes that the Virginia Supreme Court issued a one page summary

order in petitioner's state habeas petition.[8] Where the Supreme Court of Virginia provides no insight as to the manner or reason by which it applied federal law to the facts of the case, a federal court must necessarily perform its own review of the record. The deferential standard mandated by § 2254(d)(1) has less meaning in this situation, and this Court must perform its own review of the record in this matter. *See Cardwell v. Netherland,* 971 F.Supp. 997 (E.D.Va.1997).

1. **Claims XV(A)(1)(a, c, and d): Trial counsel were ineffective for failing to investigate or pursue the following potential defenses: "triggerman" defense, intoxication defense, and lack of intent to kill Officer Wallace**

■ Counsel reasonably ruled out an intoxication defense. Under *Essex v. Virginia,* 228 Va. 273, 322 S.E.2d 216, 220 (1984), proving the intoxication defense requires that the intoxication be so complete as to render the defendant unable to deliberate or premeditate. *See also Savino v. Murray,* 82 F.3d 593, 601 (4th Cir.1996) (citing *Essex* as law on intoxication defense in Virginia), *cert. denied sub nom, Savino v. Angelone,* 518 U.S. 1036, 117 S.Ct. 1, 135 L.Ed.2d 1098 (1996). Royal's own confession had detailed his deliberative behavior: he planned the murder, handed out the guns, directed the others to follow him, searched for the officer, followed the officer, aimed and shot at the officer and planned their escape to a Norfolk motel. Thus, it was reasonable for counsel to conclude the intoxication defense would not be viable. Petitioner argues that trial counsel apparently failed to realize intoxication was a potential defense to the crime, a conclusion he reaches based on his interpretation of trial counsel's comment to the trial court during sentencing that the use of drugs and alcohol was not a defense to the crime. It is not clear to the Court that Petitioner's interpretation of this statement is correct, as counsel may have meant that alcohol and drug use was not a *viable* defense. This interpretation of the statement is consistent with Royal's trial counsels' unrebutted statements by way of affidavit, which was contained in the state habeas record, that they had advised Royal to proceed to trial and raise the voluntary intoxication and triggerman defenses. Meekins/Richardson Affidavit at ¶ 11. Thus, the Court concludes that counsels' performance was not deficient. Furthermore, even if trial counsel had not realized intoxication could serve as a defense to murder under Virginia law, Petitioner could not show prejudice because, as previously discussed, the defense would not likely have been successful. *See Savino v. Murray,* 82 F.3d 593, 599 (4th Cir.), *cert. denied,* 518 U.S. 1036, 117 S.Ct. 1, 135 L.Ed.2d 1098 (1996) (rejecting claim in guilty plea case that counsel failed to investigate intoxication defense).

■ Counsel's decision to rule out a "triggerman" defense was also reasonable because the forensic reports and counsels' interview with the medical examiner indicated that the bullets taken from Officer Wallace's head were .380-caliber. Counsel knew from Royal's confession and their own discussions with him that Royal was the only one of the defendants who was carrying a .380-caliber gun. Furthermore, Royal confessed that he was the person who actually shot Officer Wallace. Counsel were entitled to rely on the truthfulness of their client in deciding how to pursue the investigation and advise their client. *See Barnes v. Thompson,* 58 F.3d 971, 979–80 (4th Cir.), *cert. denied,* 516 U.S. 972, 116 S.Ct. 435, 133 L.Ed.2d 350 (1995). Counsel's decision not to pursue a triggerman defense falls well within the wide range of reasonable professional assistance. Accordingly, the Court will dismiss this claim.

■ Petitioner also claims that trial counsel were ineffective for failing to investigate, pursue, and advise Royal as to his potential defense based on lack of intent to kill Officer Wallace. Petitioner alleges he had a viable defense based upon lack of

8. Specifically, the Virginia Supreme Court held that it found "no merit in petitioner's remaining allegations" and ordered that the petition be dismissed. Record No. 960620: Order Upon a Petition for a Writ of Habeas Corpus, issued by the Virginia Supreme Court, June 18, 1996.

intent because he killed a different officer from the one he originally planned to kill. Trial counsel were entirely reasonable in deciding not to pursue this defense. The intent to kill is not negated simply because the original object of the intent is substituted for another. *See Riddick v. Commonwealth,* 226 Va. 244, 308 S.E.2d 117, 119 (1983) (doctrine of transferred intent). Moreover, Royal's confession indicates that he knew Officer Wallace was not Officer Cooper, the original victim, yet killed him anyway. Again, counsel were entitled to rely on the truthfulness of their client in deciding how to pursue the investigation and advise their client. *See Barnes v. Thompson,* 58 F.3d 971, 979–80 (4th Cir.), *cert. denied,* 516 U.S. 972, 116 S.Ct. 435, 133 L.Ed.2d 350 (1995). Trial counsel's decision not to pursue this defense falls well within the wide range of reasonable discretion afforded to counsel. Accordingly, the Court will dismiss this claim.

### 2. Claim XV(A)(2): Trial counsel failed to advise Royal of possible defenses and rights waived by pleading guilty

Petitioner argues that trial counsel were not only ineffective for failing to investigate the defenses discussed above, but also for failing to advise Royal as to the existence of those defenses. The Court finds this claim unmeritorious for the reasons stated above.

▆▆▆ Petitioner next claims that trial counsel failed to inform him that by pleading guilty he would be waiving not only the benefit of a jury trial but also a jury sentence. He also contends that trial counsel failed to inform him that he had a viable appeal based on the denial of his suppression motion and the denial of his motion for change of venue or venire. Petitioner's trial counsel state in their affidavit that they actually advised Royal that (1) he should not plead guilty because he could proceed to trial with intoxication and triggerman defenses; and (2) by pleading guilty he would waive his right to jury trial, to present any defenses, to jury sentencing, and to appeal. Meekins/Richardson Affidavit at ¶¶ 11–12. The Petitioner, in contrast, does not respond to Respondent's motion to dismiss this claim, nor has he presented any evidence in this

Court or the state court, such as an affidavit from Royal, to support his contention that he was not properly advised of the ramifications of pleading guilty. Thus, the Court concludes that Petitioner was properly advised of the rights he was waiving by pleading guilty.

Furthermore, because Petitioner did not take or seek the opportunity to develop evidence in his state habeas petition on this claim, he has "failed" to develop the factual basis of the claim in state habeas court. *See* 28 U.S.C. § 2254(e)(2); *Cardwell v. Netherland,* 971 F.Supp. 997, 1011 (E.D.Va.1997). As a result, § 2254(e)(2), as amended, precludes the Court from considering new facts or conducting an evidentiary hearing on this claim. Petitioner cannot prevail on this claim based on the factual record before the Court. Accordingly, the Court will dismiss this claim.

### 3. Claim XV(B)(4): Trial counsel's pretrial preparation was insufficient

▆▆▆ Petitioner claims, based on the lack of interview notes in trial counsels' files, that it appears that trial counsel failed to interview various prosecution witnesses. Respondent counters that trial counsel interviewed every possible material witness in the case except the co-defendants who were prevented by their attorneys from being interviewed. *See* Meekins/Richardson Affidavit at ¶ 3. Respondent further states that trial counsel were aware of what the co-defendants would say because counsel were aware of the testimony the co-defendants have given in their own cases. Petitioner's allegation is conclusory and speculative. He has not offered evidence in this court or in state court regarding which pertinent witnesses were not interviewed, what they would have said, and what prejudice might have been caused to him by counsels' failure to interview them. Because Petitioner did not take or seek the opportunity to develop evidence in his state habeas petition necessary to support this claim, he has "failed" to develop the factual basis of the claim in state habeas court. *See* 28 U.S.C. § 2254(e)(2); *Cardwell v. Netherland,* 971 F.Supp. 997, 1011 (E.D.Va.1997). As a result, § 2254(e)(2), as amended, pre-

cludes the Court from conducting an evidentiary hearing on this claim, and the claim is unmeritorious on the current record before the court. This claim will be dismissed.

Royal also contends that even the defendant's own sentencing witnesses who trial counsel did interview prior to trial were ineffectively presented at the sentencing hearing. This issue is addressed in the Court's response to Petitioner's claim XV(D–1)(2) in which Petitioner claims that his trial counsel were ineffective at sentencing for failing to adequately raise evidence regarding his psychiatric and social background. For the reasons stated in that discussion, this claim is unmeritorious and will be dismissed.

■ Finally, Petitioner claims that given trial counsel's inexperience in litigating capital cases, it was unreasonable for them to fail to seek assistance from universities and/or public interest organizations known for their expertise in death penalty litigation. The Court has no evidence before it about what experience trial counsel had in litigating capital cases or the extent to which they sought assistance from other attorneys experienced at litigating capital cases. Petitioner merely alleges that his counsel were constitutionally deficient in failing to seek assistance from particular sources such as universities or public interest organizations that specialize in death penalty litigation. The Court is not prepared to so hold. Accordingly, the Court will dismiss this claim.

### 4. Claim XV(B)(5): Trial counsel failed to request funds for investigation

■ Petitioner claims that trial counsel were ineffective for failing to request funds for an independent ballistics expert to examine the bullets recovered by the state investigators and an independent forensic pathologist develop a "triggerman" defense. Petitioner alleges that evidence shows that a co-defendant, Mitchener, actually fired the fatal shot that killed Officer Wallace. However, Petitioner's confession is clear that he was the only one carrying a .380 caliber gun and that he shot Officer Wallace. The ballistics analysis identified the lethal bullet as .380 caliber. Furthermore, although Peti-

tioner now claims he was tricked into admitting that he had the .380 caliber, trial counsel state by affidavit that the Petitioner never wavered, in discussions with them, from his account of how he carried the .380–caliber gun, handed out different caliber guns to the others, and shot the officer with the .380–caliber gun.

Under these circumstances, it was not unreasonable for counsel to assume their client's statements to them and to the police were truthful and to therefore choose not to seek funds for a ballistics expert or a pathologist. As Strickland and Fourth Circuit cases make clear, "[w]hen a defendant has given counsel reason to believe that pursuing certain investigations could be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052; *accord Barnes v. Thompson,* 58 F.3d 971, 979–980 (4th Cir.) (counsel may rely on truthfulness of client in deciding how to pursue investigation), *cert. denied,* 516 U.S. 972, 116 S.Ct. 435, 133 L.Ed.2d 350 (1995). Because trial counsel's performance was not unreasonable, the Court will dismiss this claim.

■ Petitioner also claims that it was unreasonable for trial counsel to fail to seek funds for an investigator to interview potential mitigation witnesses. There is no federal or state constitutional right to the assistance of an investigator. *See Caldwell v. Mississippi,* 472 U.S. 320, 323–24 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (declining to decide whether Constitution requires appointment of investigator); *O'Dell v. Commonwealth,* 234 Va. 672, 364 S.E.2d 491, 499(Va.), *cert. denied,* 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 154 (1988) (same). While reasonable trial counsel would pursue and present mitigation evidence, particularly after their client pled guilty to capital murder, it is not unreasonable for counsel to decline to seek funds for an investigator to develop mitigation evidence. Petitioner's trial counsel were receiving compensation for representing him and were free to choose to spend their own time and funds to develop mitigation evidence instead of seeking to obtain assistance from an investigator. Because tri-

al counsel's performance was not deficient under *Strickland*, the Court will dismiss this claim.

### 5. Claim XV(B)(6): Trial counsel were ineffective in failing to request that Royal's first-degree murder charge be tried after the capital murder charge

Petitioner's first degree murder charge was tried the morning that the capital murder trial was scheduled. Petitioner's trial counsel state that they did ·in fact try to schedule the capital murder trial first by continuing the first-degree murder case to a date after the capital murder trial. According to trial counsel, the Commonwealth thwarted their efforts by continuing the capital murder trial to a time after the first-degree murder trial. Meekins/Richardson Affidavit at ¶ 19. Petitioner has offered no evidence, either here or in state court, to rebut trial counsel's assertions, stated under oath. Thus, the only evidence before the court is that trial counsel actually made the request which Petitioner claims he is constitutionally deficient for failing to make. The claim has no merit and will be dismissed.

### 6. Claim XV(B)(7): Trial counsel were ineffective for failing to seek recusal of the judge until after the sentencing

Petitioner claims that counsel were ineffective for failing to ask the trial judge to recuse himself before sentencing, a request Petitioner thinks was crucial because of the allegedly intense public pressure on the judge from the community and press urging him to sentence Royal to death. Trial counsel did seek recusal of the judge, but not until after he had sentenced Royal to death. The motion for recusal was based on the extensive negative publicity concerning Royal's case and the public outcry about the sentence imposed on one of the juvenile co-defendants by the same judge. In support of that motion, counsel included numerous newspaper articles, editorials, and paid advertisements by police officers as evidence of community pressure. The motion was denied.

Based on evidence submitted to this Court, most of which was also submitted to the state habeas court, it appears that there was indeed a great deal of public outrage about the murder of Officer Wallace and the lenient sentences received by his co-defendants. The trial judge himself recognized the extensive publicity, commenting, "There has been substantial publicity. There's no question about that." Tr. 4/18/94 at 10.

Nonetheless, trial counsel had reason to believe that the trial judge would not be affected by the negative publicity. At the beginning of the sentencing hearing, the trial judge stated, "Well, there may be some out there who think they've imposed pressure on me, but they haven't." Tr. 10/19/94 at 23. Furthermore, trial counsel understood certain comments made by the judge as subtle indications that the judge might be inclined to be lenient in sentencing Royal. At that point in the proceedings, Royal had decided to plead not guilty and proceed to trial. After hearing preliminary motions before the trial was to begin, the trial judge called all counsel to the bench and said the following:

> I just wanted to set the record straight on something. Syvasky Poyner [whom the judge had recently sentenced to the death penalty] was stone-cold sober when he killed those people and it was clear that he killed those people just to avoid them being witnesses against him. I think that makes a lot of difference.

*See* Meekins/Richardson Affidavit at ¶ 14. It was reasonable for counsel to conclude that the judge was suggesting that he had an open mind on the sentencing issue.

For these reasons, trial counsel's decision not to seek recusal of the judge before sentencing was reasonable. Accordingly, the Court will dismiss this claim.

### 7. Claim XV(D–1)(2): Trial counsel were in effective at sentencing

Petitioner claims that trial counsel were ineffective at sentencing for several reasons. Part of his claim regarding counsel's ineffectiveness at sentencing is defaulted under *Gray v. Netherland*, 116 S.Ct. 2074, 2080–81, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), as discussed below. The portion of this claim

**560**

that is not defaulted is Petitioner's claim that counsel were ineffective for failing to develop or present evidence of Royal's psychiatric and social background and his intoxication at the time of the offense. Specifically, Royal claims that his trial counsel were ineffective for failing to develop and present psychiatric, neurological, and psychosocial evidence that his current experts say should have been presented, failing to adequately cross-examine Ms. McDonough (the probation officer who prepared the presentence report), Dr. Ryans, or Dr. Wolber, failing to argue that his intoxication was mitigating, failing to make use of information in the presentence report, and failing to object to the court's failure to review a post-sentence report as required by the statute.

The Court recognizes that it was crucial that Royal's trial counsel present convincing mitigating evidence on his behalf during the sentencing phase. Royal had pled guilty to capital murder, and his only hope for avoiding the death penalty was to convince the judge to be lenient in imposing a sentence. The Court also recognizes that the evidence his federal habeas counsel have developed and presented indicates that, at least according to his experts, Royal's childhood appears to have been tragic, and he is significantly impaired in his intellectual abilities and psychosocial skills. Nonetheless, because Petitioner did not take or seek the opportunity to develop this evidence in his state habeas proceedings, he has "failed" to develop the factual basis of the claim in state habeas court. *See* 28 U.S.C. § 2254(e)(2); *Cardwell v. Netherland,* 971 F.Supp. 997, 1011 (E.D.Va.1997). As a result, § 2254(e)(2), as amended, precludes the Court from considering the new evidence presented on this claim.

 Furthermore, to the extent that this claim does not rely on newly presented evidence, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also, Williams v. Dixon,* 961 F.2d 448, 451 (4th Cir.1992). Trial counsel provide an

explanation in their affidavit of their strategic reasons for various choices made during the sentencing hearing. Trial counsel's performance at sentencing did not fall outside the wide range of reasonable professional assistance. Accordingly, the Court will dismiss this claim.

### 8. Claim D–2: Appellate counsel were ineffective

 An accused has a due process right to the effective assistance of counsel on appeal, *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "A petitioner claiming ineffective assistance of counsel must show that: (1) in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent performance; and (2) there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different." *Bennett v. Angelone,* 92 F.3d 1336, 1347 (4th Cir.1996) (quoting *Strickland v. Washington,* 466 U.S. 668, 690–94 (1984)).

When analyzing such claims, appellate counsel are "entitled to a presumption that [they] decided which issues were most likely to afford relief on appeal." *Evans v. Thompson,* 881 F.2d 117, 125 (4th Cir.1989). Furthermore, counsel are not obligated to assert all non-frivolous issues. Rather, "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from incompetence, is the hallmark of effective appellate advocacy." *Smith v. South Carolina,* 882 F.2d 895, 899 (4th Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990) (quotations and citations omitted).

Petitioner claims appellate counsel, who were the same attorneys that represented him in the trial court, were ineffective for failing to raise the following issues on appeal: the invalidity of the plea; invalidity of the jury waiver; and invalidity of a sentencing scheme that fails to provide the sentencing judge the alternative of sentencing Royal to life without parole.[9] Petitioner also claims

the proportionality issues that the Supreme

**9.** Petitioner has withdrawn his claim that appellate counsel were ineffective for failing to raise

that appellate counsel failed to adequately demonstrate that certain assignments of error were not procedurally barred from appellate review. Finally, Petitioner contends that appellate counsel failed to advance or argue the applicability of the "interests of justice" exception to the rule requiring contemporaneous objection in order to preserve certain assignments of error on appeal. As a specific example of the latter, Petitioner claims that appellate counsel failed to argue on appeal that, in the "interests of justice," intoxication constituted a defense to capital murder, despite trial counsel's failure to raise this defense or make a contemporaneous objection.

 The Court turns first to Petitioner's claim that his appellate counsel were ineffective for failing to raise on appeal the issue of the invalidity of the plea. In addition to holding that this claim is defaulted under *Slayton,* the state habeas court also rejected this claim pursuant to the authority of *Anderson v. Warden,* 222 Va. 511, 281 S.E.2d 885 (1981) which holds that an accused who enters a guilty plea is bound by his representations at trial regarding the voluntariness of the plea. Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. *See Sargent v. Waters,* 71 F.3d 158, 160 (4th Cir.1995) (citing *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is unclear whether the holding in *Anderson* is based on its interpretation of federal law or merely borrows from federal law to reach its conclusions. Nonetheless, the Court agrees with the state court's conclusion, and concludes that the rule of *Anderson v. Warden* is consistent with federal law on the issue.

In the context of a plea of guilty to a federal offense, the Fourth Circuit has held that "the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is established are 'conclusively' established by that proceeding unless and until he makes a reasonable allegation why this should not be so." *Crawford v. United States,* 519 F.2d 347, 350 (4th Cir.1975), *cert. denied,* 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976), *overruled on other*

*grounds, United States v. Whitley,* 759 F.2d 327 (4th Cir.), *cert. denied,* 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 164 (1985); *see also, Nesbitt v. United States,* 773 F.Supp. 795, 799 (E.D.Va.1991) ("Sworn statements in a plea proceeding are conclusive unless the movant can demonstrate compelling reasons for questioning their truth, such as ineffective assistance of counsel.").

 As these cases illuminate, the proper inquiry is whether there are "compelling reasons" for questioning the truth of the representations made by Royal during the plea colloquy that the plea was voluntarily and knowingly given. Petitioner offers no "compelling reasons" in his discussion of this ineffective assistance of appellate counsel claim, but he does have an independent claim that his plea was involuntarily given (Claim I) which the Court assumes to be his explanation of "compelling reasons" to question the truth of his representations during the plea colloquy. The discussion of Claim I below details the Court's reasons for rejecting that claim, and those reasons also require the Court to dismiss this claim for ineffective assistance of appellate counsel for failure to raise the validity of the plea on appeal.

Petitioner next claims that his appellate counsel were ineffective for failing to raise on appeal the claim that the jury waiver was invalid. This claim is raised in the federal habeas petition in a one sentence conclusory statement with no discussion of the facts that give rise to Petitioner's claim or the applicable legal standard. The claim is not mentioned in Petitioner's response to the motion to dismiss. Although it is unclear from the sparse discussion in Petitioner's pleadings, the Court assumes that this claim refers to his independent claim that his guilty plea was not voluntary because he was not informed that he was waiving a sentencing jury (Claim I(A)(2)). There is no evidence before the Court to rebut trial counsels' statements by affidavit that they advised Royal that by pleading guilty, he was waiving his right to jury sentencing. *See* Meekins/Richardson Affidavit at ¶ 12. Thus, there is no evidence before the Court that there is any merit to

Court was mandated to consider under Va.Code § 17–110.1.

the claim that Petitioner's waiver of jury sentencing was invalid. Therefore, the Court cannot conclude that appellate counsel were ineffective for failing to raise on appeal what appears, based on the evidence before the Court, to be a meritless claim. The Court will dismiss this claim.

Petitioner next claims that his appellate counsel were ineffective for failing to raise on appeal Petitioner's claim that the sentencing scheme that fails to provide the sentencing judge the alternative of sentencing Royal to life without parole is invalid. This claim is raised in the federal habeas petition in a one sentence conclusory statement. Although the discussion of how appellate counsel's failure to raise this issue on appeal is brief, Petitioner provides more detail about the merits of this claim in his discussion of Claim IX, which is the independent claim that Virginia's former statutory capital punishment scheme was unconstitutional.

The essence of the argument is that under Virginia's former statutory capital punishment scheme, the sentencer is compelled to choose between two alternative sentences life imprisonment or death. Va.Code Ann. § 19.2–264.2(2). At the time of Petitioner's sentencing, "life imprisonment" had two different meanings depending upon the defendant's prior record. Defendants convicted of three violent felonies were ineligible for parole. See Va.Code Ann. § 53.1–151. For those capital defendants, "life imprisonment" meant life imprisonment without possibility of parole. For all other defendants, like Royal, parole eligibility for a capital offense was mandatory after the defendant had served a period of years. Because Royal was not a third-time felon at the time of his sentencing, the option of imposing upon him a life sentence without possibility of parole was not available. Under this scheme, the argument goes, the sentencer was more likely to sentence Royal, a first-time felon, to death than a third-time felon, because there was no option to give Royal life without parole. This scheme has now been altered such that a sentencer in a capital case must choose between imposing a sentence of life without parole or death. See Va.Code Ann. § 53.1–165.1.

 Although the Court finds this argument appealing as a matter of logic and fairness, there is no authority which provides a right for capital defendants to be treated like third-time felons who are ineligible for parole. Furthermore, the Court could not announce such a right here by extending existing precedent because to do so would run afoul of the "new rule" doctrine. See Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In short, the Court cannot conclude that appellate counsel were ineffective for failing to raise an issue on appeal for which there was no direct authority in the case law. Therefore, the Court will dismiss this claim in its form here of ineffective assistance of counsel and below as an independent claim challenging the sentencing scheme.

Petitioner also claims, in a one sentence conclusory statement, that his appellate counsel failed to adequately demonstrate that certain assignments of error were not procedurally barred from appellate review. Petitioner provides no details of which assignments of error he believed were properly preserved. This claim will be dismissed as Petitioner has not even detailed the facts supporting his claim, much less adequately rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 Finally, Petitioner contends that his appellate counsel failed to advance or argue the applicability of the "interests of justice" exception to the rule requiring contemporaneous objection in order to preserve certain assignments of error on appeal. As a specific example, Petitioner claims that appellate counsel failed to argue on appeal that, in the "interests of justice," intoxication constituted a defense to capital murder, despite trial counsel's failure to raise this defense or make a contemporaneous objection. As the Court understands Virginia law, the claim that intoxication was a defense to the murder could not have been raised on appeal because Royal's guilty plea was an absolute waiver of "all defenses other than those jurisdictional." Peyton v. King, 210 Va. 194, 169 S.E.2d 569,

571 (1969). Thus, Petitioner's appellate counsel could not be ineffective in failing to raise this claim on appeal when there was no right to appeal it.

 It is clear from the wording of this claim that Petitioner intended to also present a claim that appellate counsel were ineffective for failing to argue the "interests of justice" exception to other, unenumerated assignments of error. The alleged errors of appellate counsel must be more sufficiently detailed than this sweeping, conclusory statement to warrant relief from the Court. Accordingly, the Court will dismiss this claim.

## VIII. CLAIMS EXPRESSLY FOUND TO BE PROCEDURALLY DEFAULTED BY THE VIRGINIA SUPREME COURT PURSUANT TO *SLAYTON V. PARRIGAN*

 The Virginia Supreme Court expressly found most of Petitioner's claims procedurally defaulted pursuant to *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974). Under the rule in *Slayton*, state habeas review is barred by the failure to raise an issue at trial or on direct appeal. *Slayton* is a well recognized bar to federal review. *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Spencer v. Murray*, 18 F.3d 229, 232 (4th Cir.1994). This Court may only review claims barred by Virginia pursuant to *Slayton* if Petitioner is able to "demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Court will review each claim defaulted under *Slayton* to evaluate whether it can be reviewed on the merits by the Court.

### A. Claim I(A): The guilty plea was not knowingly and voluntarily made (State habeas claim II)

Although the Petitioner's discussion of cause for the default of this claim is less than clear, the Court assumes he intended to assert as cause the ineffective assistance of his appellate counsel for failing to raise this claim. However, an action or omission by a defendant's lawyer constitutes "cause" for a procedural default only if it rises to the level of constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Because the Court has rejected Petitioner's claim of ineffective assistance of appellate counsel for failure to raise this claim, that alleged ineffectiveness cannot serve as cause to excuse the default of this claim. Because Petitioner is unable to show cause, the Court must dismiss this claim as procedurally defaulted.

### B. Claim II: The death sentence violated due process because it was based on evidence admitted in violation of a plea agreement (State habeas claim IV)

 According to Petitioner, the trial court's violation of Petitioner's due process rights through the receipt of evidence in violation of a plea agreement deprived it of jurisdiction. Petitioner argues that *Slayton* may not properly be applied to bar this claim because the claim is a challenge to the jurisdiction of the trial court, a claim to which *Slayton*, by its own terms, does not apply. The Fourth Circuit has specifically rejected this argument in *Mu'min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 438, 139 L.Ed.2d 337 (1997). The state court properly applied *Slayton* to bar this claim.

 Petitioner argues in the alternative that any default must be excused because it would result in the capital punishment of one who is actually innocent. In establishing actual innocence of the crime, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Although his attorneys have crafted arguments to persuade the Court that the ballistic and forensic evidence indicate that it was more likely that one of Royal's co-defendants who shot Officer Wal-

**564**

lace than that Royal made the fatal shot. However, Royal himself cleared up any confusion about who killed Officer Wallace when he confessed to committing the crime, both to the police in a taped confession, and to his attorneys. Royal repeatedly and consistently told the same story to his attorneys and the police, detailing the way he shot Officer Wallace with the .380–caliber gun when the officer opened his squad-car door and stood up to confront Royal. Royal never wavered from his account of how he carried the .380–caliber gun and handed out different caliber guns to the others. Given these facts, the Court is not prepared to say that, in light of the new evidence, no reasonable juror would have voted to find Royal guilty of the capital murder of Officer Wallace.

 Royal also argues that he is actually innocent of the death penalty. Not only may a federal court excuse a default upon a finding that the petitioner is actually innocent of the crime for which he is convicted, but also upon a finding that the petitioner is actually innocent of the death penalty. A federal court may review a capital defendant's procedurally defaulted claim if the petitioner can show by "clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty" under state law. *Sawyer v. Whitley*, 505 U.S. 333, 350, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). The Court addresses elsewhere Petitioner's various claims regarding alleged constitutional errors at his sentencing hearing, and rejects them all. Royal cannot meet the "clear and convincing evidence" standard articulated in *Sawyer*, and the Court therefore rejects his claim of actual innocence of the death penalty.

In sum, Royal has presented nothing to the Court that would enable him to meet either of the high standards announced in *Schlup* or *Sawyer* for showing actual innocence which would allow the Court to review the merits of his defaulted claims. Thus, because Petitioner is unable to show cause and prejudice for the procedural default or meet any other exceptions to procedural default, the Court will dismiss this claim.

**C. Claim IV: The trial court unconstitutionally shifted the burden to Royal to disprove future dangerousness aggravator and future dangerousness aggravator is vague (State habeas claim XVI)**

 Respondent states that the first part of this claim, the unconstitutional burden-shifting claim, is procedurally defaulted pursuant to *Gray v. Netherland*. The Court disagrees. After a lengthy argument about the vagueness of the future dangerousness aggravator in the state habeas petition, Petitioner argued that "the future dangerousness aggravator is unconstitutional, and it was erroneously applied in this case." *See* State Petition at ¶ 245. Although the "erroneously applied" claim in the state habeas petition is an extremely cursory way of raising the burden-shifting claim, the Court will assume, *arguendo*, that the burden-shifting claim was, in fact, properly presented in the state habeas petition and excluded by the state habeas court pursuant to *Slayton*, along with the vagueness claim.

The Court first considers the burden-shifting portion of the claim. Petitioner argues that this claim is not defaulted under *Slayton*, as it was presented on direct appeal to the Virginia Supreme Court and discussed in that court's opinion. The Court agrees that Petitioner raised this issue on direct appeal to the Virginia Supreme Court, as the claim was clearly stated in Petitioner's appellate brief. *See* App. Be. at 19. In considering Petitioner's direct appeal, the Virginia Supreme Court addressed two aspects of Petitioner's future dangerousness claim: (1) there was insufficient evidence to support the court's finding of future dangerousness; and (2) because Royal's prior conviction for second degree murder was on appeal, it should not have been considered as evidence of future dangerousness. *See Royal v. Commonwealth of Virginia*, 250 Va. 110, 458 S.E.2d 575, 579 (1995), *cert. denied*, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996). That court's discussion of the first issue, framed more as a sufficiency of the evidence discussion, is responsive to Petitioner's burden-shifting claim.

The primary obstacle blocking review by this court is the failure of the Petitioner to state a federal basis for relief for his burden-shifting claim in his direct appeal. In presenting a claim to the state court, the petitioner must "fairly present" the federal issue for resolution by the state court. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Thus, Petitioner's federal constitutional claims are defaulted under *Slayton.*

Petitioner argues in the alternative that any default of the burden-shifting claim should be excused because the constitutional error probably resulted in capital punishment for one who is actually innocent of capital murder. As previously discussed, Royal has presented nothing to the court that would enable him to fit within the *Schlup* or the *Sawyer* "actual innocence" exceptions to procedural default. Thus, because Petitioner is unable to show cause and prejudice for the procedural default or meet any other exceptions to procedural default, this claim may not be reviewed by this Court.

The Court now turns to the claim that Virginia's future dangerousness aggravator is unconstitutionally vague. Petitioner argues that this claim was raised in his direct appeal, but the Court does not find it in his direct appeal and thus was properly barred by the Virginia Supreme Court pursuant to *Slayton.* Petitioner argues that any default should be excused because the constitutional error probably resulted in capital punishment for one who is actually innocent of capital murder. As previously discussed, Royal has presented nothing to the court that would enable him to fit within the *Schlup* or the *Sawyer* "actual innocence" exceptions to procedural default.

In any case, Petitioner's vagueness claim in unmeritorious. In attacking the "future dangerousness" aggravating factor, Royal argues that it is unconstitutionally vague and unreliable. Fourth Circuit case law holds otherwise. *See Spencer v. Murray*, 5 F.3d 758, 764–65 (4th Cir.1993), *cert. denied*, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); *Giarratano v. Procunier*, 891 F.2d

483, 489–90 (4th Cir.1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 222, 112 L.Ed.2d 178 (1990). For the foregoing reasons, the Court will dismiss this claim.

### D. Claim V: The trial court failed to give mitigating effect to evidence in Royal's favor (State habeas claim XV)

This claim was not raised on direct appeal. The Virginia Supreme Court's application of *Slayton* to this claim bars review by this Court unless Petitioner can show cause and prejudice for the default. Because Petitioner does not attempt to demonstrate cause for his default, the Court will dismiss this claim.

### E. Claim VII: The evidence was insufficient to prove that Officer Wallace was killed for the purpose of interfering with his law enforcement duties (State habeas claim I)

Petitioner concedes that this claim is defaulted, but asserts that ineffective assistance of trial counsel during the plea constitutes cause for the default. Because the defendant's claim of ineffective assistance of counsel has failed on the merits, as discussed below, it cannot serve as cause to excuse any default. Because Petitioner is unable to show cause, the Court must dismiss this claim as procedurally defaulted.

### F. Claim VIII(A and B): The Commonwealth failed to timely produce exculpatory and impeachment material (State habeas claim VI)

Petitioner claims that the Commonwealth failed to timely produce two categories of exculpatory and impeachment material: (1) evidence regarding Trooper Richards' planting of evidence (federal habeas claim VIII(a)); and (2) statements made by Royal's co-defendants (federal habeas claim VIII(b)). With respect to Trooper Richards' planting of evidence, Respondent argues that the claim is procedurally defaulted pursuant to *Slayton.* Petitioner disagrees, citing *Coleman*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), for the proposition that a claim is not deemed defaulted where the

basis of the claim is not known at the time of the alleged default. However, the Court concludes that the basis of the claim was, in fact, known at the time of the alleged default, and thus is defaulted under the authority of *Slayton.*

Royal pled guilty to the capital murder of Officer Wallace on September 19, 1994. Soon thereafter, Petitioner's trial counsel, Mr. Meekins, received a letter dated October 7, 1994 in which the Commonwealth disclosed that Trooper Richards had been charged with planting three explosive devices in a courthouse. The letter further explained that in conducting a review of cases on which Trooper Richards had worked, the trooper admitted that he planted a .380 pistol which was listed as evidence in Royal's case. The letter represented that none of the other evidence listed in Royal's case had been planted or otherwise mishandled by the officer. The October 7 letter provided Royal with the necessary information such that he could have made his current claims in the trial court, asked for withdrawal of his guilty plea, a continuance, discovery, or any other remedy to which he believed he was entitled.

█ As Petitioner correctly notes in his federal petition, withholding *Brady* material "may be grounds to invalidate a guilty plea." *Banks v. United States,* 920 F.Supp. 688, 691 (E.D.Va.1996). Petitioner's claim is that Trooper Richards planted a .380 pistol at the scene of the crime to corroborate statements made by one of Royal's co-defendants, Sanders. According to Petitioner, this was done to trick him into admitting he had carried the .380 pistol and confessing to the murder of Officer Wallace. If this indeed is what occurred, the Court agrees with Petitioner that those circumstances warrant a careful inquiry into the validity of the confession and the plea. However, the Court may not reach the merits of this claim because it is procedurally defaulted. Despite the receipt of the letter received from the Commonwealth disclosing Trooper Richards' planting of the .380–caliber pistol, Petitioner did not seek to withdraw his guilty plea. Petitioner also could have raised his current claims on direct appeal to the Virginia Supreme Court. Therefore, the claim that Petitioner's rights under

*Brady* were violated based on the Commonwealth's failure to disclose that Trooper Richards planted a gun in his case is defaulted pursuant to *Slayton* and may not be reviewed by this Court.

On March 3, 1995, the Commonwealth sent Royal's appellate counsel, Mr. Meekins, another letter which disclosed that Trooper Richards had, since the date of the Commonwealth's last letter, admitted that he planted a .22 cartridge during the investigation of the death of Officer Wallace. Petitioner had already filed his direct appeal on February 8, 1995, but the Virginia Supreme Court had not yet issued its opinion in the case. That court's opinion and order resolving Petitioner's direct appeal was entered on June 9, 1995. Petitioner was obligated to supplement his pleadings on direct appeal with this claim. His failure to do so renders the claim that Petitioner's rights under *Brady* were violated based on the Commonwealth's failure to disclose the planting of a .22 cartridge in his case defaulted pursuant to *Slayton.* Thus, Claim VIII(a) is defaulted in its entirety.

Royal asserts that state interference constitutes cause for the default. In support of this argument, Petitioner argues that the Commonwealth withheld full evidence of Trooper Richards' misconduct until a time when Royal had already been sentenced. As previously discussed, the Commonwealth disclosed the evidence that Trooper Richards planted both the .380–caliber pistol early enough that claims could have been raised both at trial and direct appeal, and disclosed that the .22 cartridge was planted such that those claims could have been raised on direct appeal. Therefore, state interference, if there indeed was any, does not constitute cause for the default of this claim. For the reasons previously stated, the Court also rejects Petitioner's contention that the default must be excused because he is actually innocent of capital murder.

The Court now turns to Royal's claim that his rights under *Brady* were violated by the Commonwealth's failure to disclose statements made by his co-defendants (Claim VIII(b)). The Virginia Supreme Court held that this claim was defaulted under *Slayton.* A review of the record reveals that Royal raised this exact issue in pre-trial proceed-

ings, but failed to raise the claim on direct appeal.

■ Petitioner raises as cause for the default his inability to know the impact Trooper Richards' misconduct may have had on the co-defendants' statements. Petitioner asserts that in light of Trooper Richards' misconduct, the statements of the co-defendants must be examined to determine whether they were changed or tailored to corroborate the planted evidence, or vice-versa. This proffered cause for default fails because, as stated above, Royal knew of Trooper Richards' misconduct in time to raise it in trial, or at least on direct appeal. Therefore, Royal could have raised in those same fora the claim regarding statements made by Royal's co-defendants, including concerns about the ways in which Trooper Richards' misconduct may have affected the co-defendants' statements.

Petitioner next offers as cause the ineffective assistance of appellate counsel for failing to raise this issue on appeal. Because ineffective assistance of counsel for failure to raise this claim on appeal has not been raised as an independent claim for relief, it cannot serve as cause to excuse the default of this claim. *George v. Angelone,* 901 F.Supp. 1070, 1087 (E.D.Va.1995) (citing *Justus v. Murray,* 897 F.2d 709 (4th Cir.1990)), *aff'd,* 100 F.3d 353 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 854, 136 L.Ed.2d 829 (1997). The Court again rejects Petitioner's assertion that his actual innocence excuses the default of this claim. Because Petitioner is unable to establish cause and prejudice or any other exception for the default, the Court will dismiss this claim.

**G. Claim IX: Virginia's former statutory capital punishment scheme was unconstitutional because it did not provide for the option of life without parole (State habeas claim XIV)**

As previously stated upon reviewing Petitioner's claim that appellate counsel were ineffective for failing to raise this issue on appeal, the Court finds this argument appealing as a matter of logic and fairness. However, because the defendant's claim of ineffective assistance of appellate counsel has failed on the merits, it cannot serve as cause to excuse this default. Because Petitioner is

unable to show cause, the Court must dismiss this claim as procedurally defaulted.

**H. Claim X: The trial court erred in denying the motion for change of venue (State habeas claim IX)**

This claim is defaulted. Because the defendant's claim of ineffective assistance of counsel at the plea has failed on the merits, it cannot serve as cause to excuse any default. Therefore, the Court must dismiss this claim as procedurally defaulted.

**I. Claim XI: The trial court sentenced Royal out of passion and prejudice (State habeas claim XV)**

This claim is procedurally defaulted. Petitioner's arguments to the contrary are based on a misunderstanding of the law. As no cause for the default has been offered, the Court will dismiss this claim.

**J. Claim XII: The trial court denied the motion to recuse (State habeas claim XI)**

This claim is defaulted. Because the defendant's claim of ineffective assistance of counsel for failure to move for recusal before the sentence has failed on the merits, it cannot serve as cause to excuse any default. Therefore, the Court must dismiss this claim as procedurally defaulted.

**K. Claim XIII: The Virginia Supreme Court provides no meaningful appellate review (State habeas claim XVII)**

■ Petitioner argues that this claim cannot be barred by *Slayton* for failure to raise the claim on direct appeal because the claim did not exist until the Virginia Supreme Court allegedly failed to provide adequate appellate review. *See Cola v. Reardon,* 787 F.2d 681, 694 (1st Cir.1986) ("to require defendants to object to appellate tribunal errors *prior* to the appellate opinion is, in our view, to impose unreasonable demands of foresight") (emphasis in original), *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). The Court agrees and will address the claim on the merits.

■ Royal claims that the Virginia Supreme Court failed to engage in meaningful

or fair appellate review of his case under Va.Code § 17–110.1, which requires the court to ensure that the death penalty was not "imposed under the influence of passion, prejudice or any other arbitrary factor." A review of existing case law reveals, however, that the existence of such a claim has never been recognized or alluded to by the United States Supreme Court. *See George v. Angelone*, 901 F.Supp. 1070, 1090 (E.D.Va.1995), *aff'd*, 100 F.3d 353 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 854, 136 L.Ed.2d 829 (1997). Accordingly, the Court must dismiss Royal's challenge to the state appellate process as barred by the "new rule" doctrine. *See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

### L. Claim XIV: The death penalty in Virginia is discriminatory and cruel and unusual (State habeas claims XVIII, XIX)

Petitioner's arguments that this claim is not defaulted are unconvincing. Thus, because Petitioner is unable to show cause and prejudice for the procedural default or meet any other exceptions to procedural default, this claim may not be reviewed by this Court.

Even if the Court were to review this claim on the merits, the claim is clearly unmeritorious. The Virginia Supreme Court, however, rejected this claim in *Beaver v. Commonwealth*, 232 Va. 521, 527, 352 S.E.2d 342, *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987), as answered by previous cases. The Fourth Circuit similarly has rejected this argument outright. *See Briley v. Booker*, 746 F.2d 225, 227 (4th Cir.1984). Accordingly, this Court must also reject this claim of constitutional error.

### M. Claim XV(B)(1,2,3): The state failed to provide more than one attorney at the preliminary hearing, attorney Richardson was not qualified, and Richardson's appointment as a part-time judge violated Royal's rights (State habeas claim V ¶¶ 130–150)

■ Petitioner argues that the Virginia Supreme Court improperly applied *Slayton* to this claim. In *Slayton*, the petitioner had not advanced a particular defense either at his trial or on direct appeal. The *Slayton* court ruled that "the court below erred, absent a showing of ineffective assistance of counsel in failing to raise that question, in permitting inquiry on this question for the first time in the habeas corpus proceedings." *Slayton*, 205 S.E.2d at 682. Petitioner argues that he did, in fact, raise a claim in his state habeas petition that counsel were ineffective for not raising this claim earlier. The Court disagrees. Petitioner raised Claim XV(B)(1, 2, and 3)in his state habeas petition, but he did not raise an ineffective assistance of counsel claim for failure to present that claim in earlier proceedings. Thus, this claim is barred under *Slayton*. Because Petitioner presents no cause and prejudice analysis to excuse his procedural default, the Court may not review this claim.

### N. Claim XVI: Royal's mental health expert was ineffective (State habeas claim XX)

■ Petitioner contends that there is cause for his default in that the same attorney represented him during his direct appeal and trial. The fact that Petitioner was represented at trial and on appeal by the same counsel does not serve as cause for the default of this claim. Furthermore, Royal has no independent claim that his appellate counsel were ineffective for failing to raise this issue. Because ineffective assistance of counsel for failure to raise this claim on appeal has not been raised as an independent claim for relief, it cannot serve as cause to excuse the default of this claim. *George v. Angelone*, 901 F.Supp. 1070, 1087 (E.D.Va. 1995) (citing *Justus v. Murray*, 897 F.2d 709 (4th Cir.1990)), *aff'd*, 100 F.3d 353 (4th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 854, 136 L.Ed.2d 829 (1997). Accordingly, the Court must dismiss this claim as procedurally defaulted.

### IX. CLAIMS PROCEDURALLY DEFAULTED IN THIS COURT PURSUANT TO *GRAY V. NETHERLAND*

■ Several of Royal's claims are procedurally defaulted in this Court pursuant to *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 2080–81, 135 L.Ed.2d 457 (1996) because they were never presented in state court. Respondent's reliance on § 2264(a) of

the AEDPA in support of his default argument is misplaced. As discussed above, § 2264(a) applies only to opt-in states, and the Court has held that Virginia does not satisfy the opt-in provisions. Under pre-Act standards, this Court may only review claims procedurally defaulted in federal court pursuant to *Gray* if Petitioner "can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Therefore, the Court will review each claim defaulted under *Gray* to evaluate whether Petitioner is able to establish the requisite cause and prejudice to excuse the default.

**A. Claim I(B): The guilty plea was involuntary because there was no actual basis for the plea and Royal relied on false evidence**

 Petitioner states that the Commonwealth's failure to make timely disclosure of exculpatory and impeachment material as required under *Brady* serves as cause for this default. As previously discussed, the Commonwealth did disclose the planting of both the .380-caliber pistol and the .22 cartridge at a time when claims relating to that officer misconduct could have been raised on direct appeal. Petitioner was informed that the gun had been planted before his sentencing and could have raised any claims or requests for relief in that forum. He was informed that the .22 cartridge was planted one month after he had filed his direct appeal, but two months before the Virginia Supreme Court entered its order on the appeal. Petitioner was obligated to supplement his direct appeal pleadings to raise this claim in the state court. Furthermore, Petitioner's asserted cause makes no account of his failure to raise this claim during state habeas proceedings. Thus, the Commonwealth's timing in disclosing this *Brady* material may not serve as cause to excuse the default.

**B. Claim III: The confession violated the Fifth and Sixth Amendments**

 This claim was not raised in state habeas proceedings. It is therefore default-ed. Petitioner asks the Court to follow the Ninth Circuit's ruling in *Beam v. Paskett* in which that court refused to apply procedural default rules to claims not expressly raised on appeal but required to be reviewed by the state supreme court pursuant to the state's mandatory review statute. *See Beam v. Paskett,* 3 F.3d 1301 (9th Cir.1993), *cert. denied sub nom, Arave v. Beam,* 511 U.S. 1060, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994); *see also Bennett v. Angelone,* 92 F.3d 1336, 1344–45 (4th Cir.) (discussing similarities between Va.Code Ann. § 17–110.1 and Idaho statute at issue in *Beam* but declining to decide this issue), *cert. denied,* —— U.S. ——, 117 S.Ct. 503, 136 L.Ed.2d 395 (1996). The Court cannot make the ruling Royal seeks because the issue is raised here in a different context than that before the *Beam* court. Because Royal pled guilty to capital murder, not only did the Virginia Supreme Court have no obligation to automatically review this claim pursuant to Va.Code Ann. § 17–110.1, but also Royal had actually waived his right under state law to appeal the constitutionality of his confession. Petitioner had no remedy under state law as his claim on direct appeal would have been controlled by the rule in *Peyton v. King,* 210 Va. 194, 169 S.E.2d 569 (1969), that an accused person who enters a guilty plea waives the right to challenge non-jurisdictional defects. Furthermore, even if the context had been different and the claim currently raised in federal habeas was one that the Virginia Supreme Court was required to automatically review pursuant to Va.Code Ann. § 17–110.1, Royal would still have no account for his failure to raise the claim in state habeas. For these reasons, the Court will not follow the *Beam* court's analysis, and concludes that this claim is defaulted. Because Petitioner does not offer any cause to excuse this default, the Court will dismiss this claim.

**C. Claim VIII (A and B): The Commonwealth's failure to produce allegedly exculpatory evidence invalidated the plea and Officer Richards planted evidence to induce Royal to confess**

These specific portions of Claim VIII are procedurally defaulted pursuant to *Gray.*

The remainder of this claim is procedurally defaulted pursuant to *Slayton,* and is discussed above in the section devoted to *Slayton* claims. Petitioner does not address the fact that these portions of Claim VIII are defaulted in responding to Respondent's motion to dismiss. The Court assumes that Petitioner merely failed to parse the claim so specifically, and probably intended to incorporate his cause and prejudice analysis provided in his discussion of Claim VIII(A and B). This provides no relief for Petitioner, however, because the Court has already rejected the cause and prejudice analysis provided as excuses for the defaults under *Slayton.* Therefore, finding no cause to excuse the default, these portion of Claim VIII(A and B) will be dismissed.

### D. Claim XV(A)(1)(b): Counsel failed to develop a defense that Royal killed Wallace due to Wallace's alleged affair with "Angel"

■ Petitioner argues that this claim was presented in his state habeas petition and is therefore not defaulted. Petitioner does not direct the Court to the location of the claim in the state habeas petition, and the Court does not find it therein. Petitioner argues in his state habeas petition that trial counsel were ineffective for failing to argue that Petitioner did not have the requisite intent to kill Officer Wallace because he actually intended to kill a different officer. *See* State Pet. at 22. Petitioner did not argue in his state habeas petition that Petitioner killed Officer Wallace because of an affair with Petitioner's girlfriend.

■ Before this Court can consider a claim, "the substance of a federal habeas corpus claim must first be presented to the state courts." *Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996) (quoting *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also, Bassette v. Thompson,* 915 F.2d 932, 935–37 (4th Cir.1990). Petitioner has made no showing of cause for his default or prejudice, so he may not raise his present claims in federal court.

### E. Claim XV(A)(2): Counsel failed to advise Royal of possible defenses and rights waived by pleading guilty

Respondent argues that Petitioner's claim that trial counsel failed to advise him that he had a right to jury sentencing is defaulted under *Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). The Court agrees. In his state habeas petition, Petitioner raised the claim that Petitioner's waiver of his right to jury was not made intelligently, knowingly, and voluntarily because he was not informed that he was waiving a sentencing jury. *See* State Pet. For Writ Of Habeas Corpus at 30–37 (Claim III). However, Petitioner failed to raise the claim that his trial counsel were ineffective for failing to advise him that he had a right to jury sentencing. Petitioner represents that that claim can be found on pages 44 and 54 of his state habeas petition, but the Court does not find that claim therein or elsewhere in the state habeas petition. Therefore, the claim is defaulted, and the Court may not review it unless Petitioner is able to show cause and prejudice for the default.

■ Petitioner argues that to the extent that this claim was not properly presented in state habeas, any default is excused due to the ineffective assistance of state habeas counsel. As the Fourth Circuit recently explained, "[b]ecause [Petitioner] has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate cause to excuse the procedural default of his claims that his trial and appellate counsel were constitutionally ineffective. Consequently, federal habeas review of those claims is barred." *Mackall v. Angelone,* 131 F.3d 442, 449 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998). Thus, the Court will dismiss this claim.

### F. Claim XV(A)(3): Counsel failed to present the request for counsel form as evidence to suppress the confession

■ Respondent argues that Petitioner's claim that trial counsel failed to present the lawyer form as evidence to suppress the confession is defaulted under *Gray v. Nether-*

*land,* 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). The Court agrees. Petitioner points the Court to pages 44–45 of the state habeas petition where he claims this claim can be found. The claim is simply not raised on those pages. Petitioner also refers the Court to pages 49–52 of the state habeas petition, where Petitioner does discuss his claim that his confession should have been suppressed, and to the signed Request For Appointment Of A Lawyer form attached as Exhibit 1 to his state habeas petition. However, the Petitioner did not claim in his state habeas petition that his counsel were ineffective for failing to present the request for counsel form as evidence to suppress the confession. Instead, Petitioner claimed that trial counsel were ineffective for failing to advise him that pleading guilty would result in his waiving the right to appeal issues such as the allegedly erroneous decision by the trial court not to suppress his confession. That is different than the claim he is raising here. Therefore this claim is defaulted under *Gray v. Netherland* as it was never presented to a state court.

Petitioner argues that to the extent that this claim was not properly presented in state habeas, any default is excused due to the ineffective assistance of state habeas counsel. This argument is rejected under the above-cited authority of *Mackall v. Angelone,* 131 F.3d 442, 449 (4th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998). Thus, because Petitioner is unable to show cause and prejudice for the procedural default, this claim may not be reviewed by this Court and will be dismissed.

### G. Claim XV(C): Trial counsel were ineffective at the plea

Respondent argues that Petitioner has procedurally defaulted his claim that trial counsel were ineffective at the plea because they stipulated to inaccurate facts and failed to limit the evidence that could be used in sentencing. The Court agrees. Petitioner raised a multitude of constitutional claims in his state habeas petition regarding the ineffectiveness of his trial counsel at the plea, State Pet. at 43–55, but he did not raise this particular claim. Before this Court can consider a claim, "the substance of a federal habeas corpus claim must first be presented to the state courts." *Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996) (quoting *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Petitioner's assertion that ineffective assistance of state habeas counsel serves as cause for any default of this claims is rejected under the above-cited authority of *Mackall v. Angelone,* 131 F.3d at 449.

■ Petitioner also argues that trial counsel's failure to assure the accuracy of the stipulated facts implicates the Petitioner's actual innocence of the capital murder conviction and the death sentence imposed, and thus a holding that the claim is defaulted would result in a "fundamental miscarriage of justice." As previously discussed, Royal has presented nothing to the court that would enable him to fit within the *Schlup* or *Sawyer* "actual innocence" exceptions to procedural default. Thus, because Petitioner is unable to show cause and prejudice for the procedural default or meet any other exceptions to procedural default, this claim may not be reviewed by this Court and will therefore be dismissed.

### H. Claim XV(D–1)(1): Counsel failed to argue that the Court could not sentence Royal to death because stipulation did not establish requisite elements of capital murder

Petitioner does not dispute that this claim is defaulted, but asserts that the default is excused because of his actual innocence. For reasons previously stated, the Court rejects Petitioner's actual innocence claims, as he is unable to meet the high standards enunciated in *Schlup* and *Sawyer* to excuse his defaults. Even if the Court were to review the merits of this claim the Petitioner would find no relief. The essence of this claim is that there was insufficient evidence to enable the trial court to conclude that Petitioner was guilty of one of the classes of murders that is punishable by the death penalty in the state of Virginia. Petitioner pled guilty to capital murder, and it is clear that the trial court was at liberty to punish him accordingly.

### I. Claim XVII: Due Process was violated by the government's use of planted evidence

Petitioner concedes that this claim is defaulted pursuant to *Gray*, but fails to assert any cause that might excuse the default. Accordingly, the Court will dismiss this claim.

### J. Claim XVIII: Royal is factually innocent

This claim is procedurally defaulted. Petitioner argues that the default should be excused because the constitutional error probably resulted in capital punishment for one who is actually innocent of capital murder. As previously discussed, Royal has presented nothing to the court that would enable him to fit within the *Schlup* or the *Sawyer* "actual innocence" exceptions to procedural default. Thus, because Petitioner is unable to show cause and prejudice for the procedural default or meet any other exceptions to procedural default, this claim may not be reviewed by this Court. Of course, the same result would have been reached had the Court considered the claim on the merits, because the standard for showing actual innocence for the purpose of excusing a procedural default is the same as the standard for granting relief on an independent claim of actual innocence.

### X. Petitioner's Motion For Order Compelling Discovery

Because the Court has dismissed each of Petitioner's claims, this motion will be DENIED as moot.

### XI. CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss will be GRANTED in its entirety. Accordingly, each of petitioner's claims will be DISMISSED WITH PREJUDICE, and the petition will be denied.

An appropriate Order will issue.

### ORDER

Upon due consideration, for the reasons stated in the Memorandum this day filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that:

1. The Clerk is directed to substitute S.V. Pruett as the Respondent, in place of J.D. Netherland;

2. Respondent's Motion To Dismiss (Docket No. 50) is GRANTED;

3. Claims I, II, III, IV, V, VII, VIII, IX, X, XI, XII, XIII, XIV, XVI, and Claims I and II presented in petition as claims not presented to state court (the latter two have been renamed claim XVII and claim XVIII, respectively, in the Court's memorandum to avoid confusion) are procedurally defaulted and dismissed;

4. Claims VI and XV, which were preserved for review by the Court, are dismissed;

5. Royal's Motion For Order Compelling Discovery (Docket No. 68) is DENIED as MOOT;

6. The petition for a writ of habeas corpus (Docket No. 44) is DENIED;

7. At the expiration of thirty days, unless an Appeal has been filed, let the Clerk return to the appropriate repository such records as the Court has received in reference to this cause;

8. This action is dismissed with prejudice; and

9. All remaining motions not previously ruled on by the Court are DENIED as MOOT.

Let the Clerk send copies of this Order and the accompanying Memorandum to Royal and all counsel of record.